MAY 31, 1804.

# James Brown *v.* The Heirs of John Crow.

*Upon an appeal from a decree of the General Court.*

1. It is a rule of evidence, applicable to both courts of law and equity, that what is admitted by the parties in their pleadings, need not be proved, and can not be controverted.

2. A survey which does not conform to the entry, must, to the extent of the departure, yield to a junior entry and survey.

By consent of the parties, this cause was reheard, and the former decree of this court opened. And as Crow's heirs were complainants in the court below, it is proper to examine into their claim to the land in contest.. Crow's settlement is included in the bounds of his entry made with the surveyor upon his pre-emption warrant, and his claim is thereby reduced from 1,400 to 1,000 acres; wherefore, it is deemed immaterial to examine into the location or situation of his settlement. And as his pre-emption does not refer to his entry upon his certificate for settlement, it can have no influence in determining the situation or form of his pre-emption; neither is there any interference between Crow's settlement and Brown's settlement and pre-emption. Crow's claim depends, in the first place, upon his pre-emption entry, which calls to lie on the waters of Dick's river, adjoining William Fields on the northwest, James Brown on the south, Henry Thomas on the north, John Gabriel Jones on the north-east, Stephen Fisher on the east, William Crow on the east, and to extend south for quantity. Brown, in his answer, admits that all of those claims called for lie around the claim of Crow; and it is further admitted by the parties, as appears from the record, that the improvements and springs, as represented by the surveyor in the last plat returned in the cause, are to be considered and taken as being truly represented, and as claimed by the different persons designated, and that no proof respecting them shall be required but what is already produced in the cause and is furnished by the said plat. It is a rule of evidence, applicable to courts of law and equity, that what is admitted by the parties in the pleadings need not be proved; therefore, it is deemed unnecessary to examine into the

situation of the adjoining claims called for in Crow's pre-emption entry; because, by the admission in the answer, as well as upon the record, Brown is stopped from saying that those claims and the springs and improvements do not exist as represented in the connected plat; and further, because it is fairly to be presumed that the locations and surveys upon which the claims called for depend might have been exhibited and identified, had not those admissions been made. It being thus admitted that those claims are around Crow's pre-emption, the first question which presents itself is, how should Crow's claim be surveyed to adjoin them? From the agreement entered into in 1774, as will hereafter be shown, Crow could not approach nearer than half way from his improvement and spring to the improvements and springs of those claims which he calls to adjoin; and being so confined, the next part of his entry which requires consideration is, the call "to extend south for quantity." This call must either be considered as surplusage, or it must have its appropriate meaning. If Crow's claim was entirely surrounded by the adjoining claims, the call "to extend south for quantity" would be surplusage. But, from the surveyor's report, this is not the fact; for it appears that if Brown's claim had been surveyed agreeably to location, or to the agreement entered into by the early improvers, there would be a vacancy between the claims of Brown and William Crow, as will hereafter be shown, and unless this call "to extend south for quantity" has its appropriate meaning, Crow will not get even his 1,000 acres. Therefore, agreeable to the rules of construction, to give every call effect, where it can rationally be done, Crow must extend south, which will cover a great part of the land in controversy. Before Brown's claim is examined into, it will be necessary to determine whether the agreement stated by Crow and partially admitted by Brown is sufficiently proved, and what is its legal effect. The weight of testimony in the cause establishes that the company of early improvers, of which both Crow and Brown were members, agreed that all cabins built by consent should hold the land half way to the next adjacent cabin, and it appears in proof that this agreement was so understood and claimed by Brown in another controversy, and that he therein not only claimed but received the advantages resulting from it. Brown knew of the cabin at Nourse's spring, assisted in building it, and from his knowledge of the situation of the adjoining claims, when he saw Crow's pre emption entry, must have known that it would include

that cabin and spring. He also had actual notice that Crow's survey was made, and included those objects, prior to the survey of his settlement, and long previous to the making his pre-emption entry. Brown, therefore, acted *male fide* in surveying his settlement contrary to the ancient agreement, and contrary to its location; also in entering his pre-emption warrant so as to interfere with Crow's survey. Agreements entered into to settle boundaries have been carried into effect in the case of grants made by the crown of Great Britain for lands in America. *Penn* against *Lord Baltimore,* 1 Ves. 445.

Dividing lines between settlement and pre-emption claims were recognized and established by the court of commissioners, as well as by the courts of this country; therefore, Brown had no right to include any land beyond a line run half way between his improvement and the spring and the cabin and Nourse's spring. And although Crow, in running the line between the town spring and Brown's spring, has deviated from a half-way line, yet this was not done with a design to depart from the ancient agreement, but was done in consequence of a suggestion by the deputy, that the principal surveyor would not approve the survey if made agreeably to that agreement; nor does it appear that this trivial departure has been injurious to Brown, and, therefore, will not even excuse him in departing from that agreement.

Brown's settlement, from its location, and from repeated decisions, ought to have been surveyed to include his improvement in the center of a square, with lines to the cardinal points, and not in a parallelogram, as he has surveyed it. This would have left a space of about 250 poles between his claim and William Crow's, and would be not only more consistent with his location, but would also be more correspondent with the ancient agreement, and have left room for the call in Crow's pre-emption entry "to extend south for quantity," and thereby have given him his quantity of land. Brown's settlement was surveyed as aforesaid, on the 10th day of April, 1781, and on the 14th of August following, Brown located his pre-emption to adjoin it on the west, south, and east, and as it must be presumed that the settlement survey was then of record, the pre-emption should have been surveyed to adjoin the settlement as surveyed, and, therefore, the survey made, *pendente lite,* on part of the pre-emption warrant, can not cover any part of the land which lies within the bounds of the settlement as surveyed, and which will be excluded when the set-

tlement is surveyed according to its location; and so far as Crow's location will cover the land thus excluded by extending south till he gets his quantity of 1,000 acres, so far is his claim paramount to Brown's.   Upon this review of the cause, a majority of the court think the former opinion and decree of this court was erroneous.

Wherefore, it is decreed and ordered. that the former opinion and decree of this court, as well as the decree of the general court, be annulled and set aside.   And it is further ordered, that this suit be remanded to the said general court, which is hereby directed to enter up a decree in favor of Crow's heirs, conformably to this opinion, and that they make such other and further decree as equity may require. and that the appellant do pay unto the appellees their costs by them about their suit in this behalf expended; which is ordered to be certified to the said court.