DAVID DUNHAM AND
DANIEL D. TOMPKINS, }   *Plaintiffs in error,*

against

PETER G. STUYVESANT,   *Defendant in error.*

DUNHAM
v.
STUYVESANT.

THIS cause came before this court, on a writ of error, from the supreme court. For the facts in the case, and the judgment of the court below, see vol. 9. p. 61.

*T. A. Emmet,* for the plaintiffs in error, contended, that if the possession of the defendant was not adverse, it was a mere tenancy at sufferance, which was put an end to by the entry of the plaintiffs. But a possession like that of the defendant, gained by mere inadvertence, for the mere convenience of erecting fences, or, perhaps, by the understanding of both parties, could not be deemed adverse. To constitute a bar to the plaintiffs' right of recovery, the possession must be adverse at its commencement, and continue so uninterruptedly for 25 years. (1 *Johns. Rep.* 186.)

The crooked fence, in the present case, was never put up as a *boundary* between the parties, or to mark the limits of their respective titles; but was erected merely to keep out cattle. The defendant's willingness to have a straight line or fence run between him and the plaintiffs, shows that his possession was never intended to be adverse.

Where an adverse possession is relied on, there must be evidence of an *actual ouster.* (2 *Esp. Dig.* (*Eject.*) 9. *Comp.* 217.) Now, here never was any *ouster,* or possession held against the will of the defendant.

Again, the *parol* admissions of the defendant were not admitted in evidence to *change the possession,* but merely to show what the defendant considered the extent of the true title. The consent of the defendant that a straight line should be run, and the plaintiffs putting up the fence accordingly, fixed the right of the plaintiffs to the *locus in quo,* so that they might bring *trespass.*

The lands of A. and B. were separated by a *crooked* fence, and A. showed to B. the two extreme points of a division line, and declared that the boundary line between them was *straight,* and consented to its being so run. B. caused a *straight* line to be run between the two points showed to him by A., and erected another fence thereon, which included some land which had been in the possession of A., and his ancestors, for more than 25 years. While the surveyor was running the straight line, A. made no objection to it; but before the fence was erected upon it, he gave notice to B. to desist, and forbad the erection of it; and after it was put up, A. caused it to be pulled down; on which B. brought an action of *trespass* against him; and it was held, that the *parol* declarations or admissions of A. were not sufficient to

change the possession, and that B. could not, therefore, maintain *trespass.*

The confession of a party, as to boundary lines, does not relate to the *title* itself, but merely to the extent of such title. The admission of such evidence does not interfere with the statute of frauds, nor render titles insecure. There was written or documentary evidence of the *title.* The confessions, or parol evidence, related solely to the boundary line.

The *locus penitentiœ* is not given to a party, in regard to his admissions or confessions; but exists only as to contracts or undertakings.

The notice given by the defendant to the plaintiffs, or his forbidding them to put up the fence, was nugatory, unless he had a title to the land beyond the fence. He admitted the true line to be a straight one, and consented to its being so run. He was, then, only a tenant at sufferance; and that tenancy was determined, by the plaintiffs' erecting the fence according to the line run by the consent of the defendant.

*D. B. Ogden*, contra. This was not an action of ejectment, but trespass *quare clausum fregit;* and it was necessary for the plaintiffs to show an actual possession at the time. It is expressly stated in the case, that the defendant was in the actual possession and occupancy of the *locus in quo*, or land, on which the supposed trespass was committed. Though parol evidence, as to confessions or declarations relative to boundary, is sometimes admitted in actions of ejectment, yet it is never received in actions of trespass.

It is admitted, by the counsel for the plaintiffs, that *parol* declarations or confessions cannot be received to *change* a possession; but that the putting up of the fence did change it. Yet the defendant forbade the erection of the fence. Such an act, therefore, never can be allowed to change the possession.

*Emmet*, in reply, insisted, that a possession by the plaintiffs, anterior to the act complained of, was sufficient. Until the fence was erected, the defendant, being a tenant at sufferance, was in actual possession; but that tenancy was put an end to by the plaintiffs, and that with the consent of the defendant, and they took possession and erected their fence. So the plaintiffs only were in actual possession at the time of the trespass.

A tenant at sufferance has no right to forbid his landlord to

IN ERROR.
. ...
ALBANY,
March, 1814.

DUNHAM
v.
STUYVESANT.

make alterations or improvements. The consent of such tenant is not necessary or material.

P. W. RADCLIFF, Senator. Concurring in the opinion of the supreme court, and the reasons assigned for it, I shall merely add, that, however proper the facts relied on by the plaintiffs, and the arguments deduced from them, might be in an action of ejectment to recover the possession, or on a writ of right to try the title, it is impossible that they should avail them here. It is expressly stated in the bill of exceptions, not merely as a fact set up and attempted to be proved on the trial, but as *actually proved and established*, that *at the time* the alleged trespass was committed, the *defendant* was " *in the actual possession*" of the place in question. Now, it is settled law, and admitted by the plaintiffs' counsel on the argument, that to maintain trespass, the *plaintiffs* must be in possession. The fact here is precisely the reverse.

Nor can it be allowed to the plaintiffs to get rid of the effect of this fact, by saying that the bill of exceptions was taken by the defendant, and that they had no agency in preparing it. Whether reduced to form on the trial or not, they had equally an opportunity to be heard before it was sealed ; and it can make no difference which of the parties prepared it for the approbation of the judge. But, be that as it may, the bill contains a statement of facts for the court to pronounce upon ; and, upon those facts, the supreme court were clearly right in reversing the judgment of the court below.

YATES, Senator, was of the same opinion.

SANFORD, Senator. The defendant's possession, according to an actual boundary, had been long, clear, and adverse. If his declarations are viewed as an absolute acknowledgment, that the fence, or existing line, was erroneous, and that the line of division ought to be straight, still they cannot be considered as a relinquishment of the possession, held according to the existing line. To consider what was said by the defendant as amounting to an abandonment of his possession, or to an admission that he held as the tenant of others, would be to give to his declarations an exposition quite beyond their obvious mean-

*IN ERROR.*

ALBANY,
March, 1814.

DUNHAM
v.
STUYVESANT.

ing.    The defendant's declarations and conduct, however they might affect his title, do not import any admission that he held under any other title than his own, or any relinquishment of his ancient possession.    That possession, therefore, continued, and he was not liable to an action of trespass.    I am accordingly of opinion, that the judgment of the supreme court ought to be affirmed.

ROOT, Senator, was of opinion that the judgment of the supreme court ought to be reversed.

ELMENDORF, Senator, was of opinion that the judgment of the supreme court ought to be affirmed.

VAN BUREN, Senator, said, that there was a question deserving of consideration, whether there was a tenancy at sufferance by the defendant : that, in his opinion, the relation of landlord and tenant never existed, at any time, between the parties; and that the judgment of the court below ought to be affirmed.

*March* 24th,
1814.

This being the opinion of the other members of the court, it was thereupon ORDERED and ADJUDGED that the judgment of the supreme court be, in all things, affirmed, &c.

Judgment of affirmance.