JOHN W. PERKINS *v.* ELIZABETH HACKLEMAN et al.

If a party intending to commit a trespass on public lands, through mistake cut down trees on the land of another person, he is liable to the penalty for such trespass.

*Aliter*, if he intended to cut timber on his own land, but by mistake should cut timber on the land of another. In such a case he would not be liable to the penalty, but only for the actual damage done.

IN error from the circuit court of Octibbeha county; Hon. F. M. Rogers, judge.

The opinion contains the facts of the case.

*Crusoe*, for appellant.

1. The court below refused to give the following charge: "That under the statute upon which this action is brought, the defendant Perkins would not be liable for the acts of his agents, unless acting within the scope of their authority."

This was manifest error, and tended to the manifest injury of defendant in court below.

Principal not liable for act of agent or servant beyond what his directions extend to, and no wilful trespass of a servant, not

4*.

arising out of the execution of his master's orders, will make him responsible.   Paley on Agency, 232.

2. This statute highly penal, and to be construed strictly. Walker, R.

No one can excuse himself from operation of a penal statute, by showing he acted as agent of another.   *Keffield* v. *State*, 4 How. 304.

3. If one by mistake should go beyond his own boundary and cut trees, under impression it was his own land, he would not incur the penalty.   *Russell* v. *Irby*, 13 Ala. R. 131; 10 N. Hamp. 436.

4. Action is debt, and judgment is in damages.

The refusing to give the charge asked for by defendant Perkins, was calculated to influence the verdict of the jury. The testimony was by no means certain ; there was no proof that Perkins ever directed or authorized the cutting of the timber off of the land of plaintiffs; but, on the contrary, directed his agent, Freeman, who had the control of the hands, to be particular and not cut timber off of the Hackleman land.

The defendant had a right, even supposing the weight of evidence to be against him, to have the law propounded correctly to the jury.   It was not in the province of the court to determine what was the weight of evidence, before the finding of the jury.

*James T. Harrison*, for appellees.

The title to the land was fully established.   The facts present a very aggravated case of continued trespasses, from year to year.   The proof is full and conclusive.

John Gay proved, that in 1846, 1847, 1848, and 1849, he acted as agent for the defendants in error, and that he saw the negroes of Perkins cutting down the timber, to get tan bark; that in the spring of 1849, they cut one hundred and two red oaks, and about the same number each of the above-named years; that the hands were with a white man; that he, at different times, notified the hands that they were cutting the timber off of the land of the defendants in error, and in the spring of 1849, gave

Perkins a written notice not to remove the bark; that, at different times after said notice, he saw Perkins's wagon, day after day, hauling off said bark; that, in 1846, he notified Perkins that his hands were getting tan bark on the Hackleman land. The witness also proved that Perkins owned a tanyard about two miles from the land, which was the only one within seven miles.

Hackleman, a witness, testified, that in the spring of 1849, before the institution of the suit, Perkins admitted to him that he supposed that he was chargeable with all the timber that had been cut down and skinned on said land; that he, the witness, counted the trees, and there were three hundred and fifty red oaks, and also about fifty trees cut down to throw these on, so as to skin them.

A letter from Perkins was also given in evidence, dated 11th May, 1849, in which he offered to pay one dollar and fifty cents per cord, for the bark that had been cut on the land; and the letter went on to state, that he (Perkins) "was ignorant, at the time of the cutting of the timber off of said lands by his hands, that the land was the property of defendants in error."

The witness Copeland proved, that in 1846 he pointed out to Perkins the lines of the land of the defendants in error; that he heard cutting going on upon the land frequently afterwards; that he lived near, and saw Perkins's hands on the land in 1846.

The plaintiff in error then proved, by one of the Perkins family, that there was a good deal of timber cut off of the land by the different neighbors, for house logs and boards.

We charged for none of these. The logs that were skinned for tan bark we were after.

A certain "white man" named Freeman, was also introduced by plaintiff in error, who testified, that in the spring of 1849 he had charge of Perkins's hands, for the purpose of getting tan bark; that he is the white man spoken of by Gay; that Perkins never authorized him to cut timber off of the land of the defendants in error, but pointed out to him the land off of which he cut the timber and got the bark, "which is the same land claimed by plaintiffs;" that Perkins supposed it to be government lands; that he, the witness, cut the timber with Per-

kins's hands, and got the bark on the land pointed out to him by Perkins; that he directed him to be particular and not cut timber off of the Hackleman land; that the line was not blazed out; that there was vacant land adjoining the Hackleman tract, and witness did not know which was the land of the defendants in error, or which government land, but cut, and got bark where Perkins told him.

Here the testimony closed.

This was as clear a case as was ever made out under such circumstances.

The pretext that he thought it was government land that he was plundering, will not avail him. If a party, intending to commit a trespass on public lands, through mistake cuts down trees on the land of another person, he is liable to the penalty. *Givens* v. *Kendrick*, 15 Ala. Rep. 648; 2 Greenl. R. 130. The Alabama statute is precisely like ours. If one by mistake should go beyond his own boundary, under the impression he was cutting on his own land, he would not incur the penalty. He would only be liable in trespass. *Russell* v. *Irby*, 13 Ala. R. 131; 10 N. Hamp. R. 536. That is right. But Mr. Perkins had no land, and as he contends, intended to plunder the government, instead of Elizabeth Hackleman and others.

But it is contended, that this excellent man, Mr. Perkins, who did not know the Hackleman land after the lines were pointed out to him, and who continued his trespasses year after year, after due notice to quit, was greatly wronged in this; that the court refused to give the following charge to the jury, namely, " That under the statute upon which this action is brought, the defendant Perkins would not be liable for the acts of his agents, unless acting within the scope of their authority."

The charge is a downright abuse of terms, and an utter perversion of the doctrine of agency. Was it "within the scope" of the agent's " authority" to commit a trespass ? Can one man confer " authority" upon another to commit an unlawful act?

The principle of law is this: Whoever procures or commands another to commit a crime, or do a civil injury, is guilty of the offence himself, as principal, in the first degree. Hence,

Perkins v. Hackleman et al.

if a slave or servant commit a trespass by the command or encouragement of the master, the master is guilty of it. In trespass, all are principals. 1 Black. Com. 431, 432; 2 Murphy, R. 389; 2 Humph. R. 140, 141; 1 Hill (S. C.) 270.

It is true that no wilful trespass of a servant, not arising out of the execution of his master's orders, will make him responsible.

In this case, there was no wilful trespass on the part of the servants or agents, and every thing that was done not only arose out of the master's express orders and commands, but was in strict obedience to, and compliance with, such orders and commands.

Freeman says he cut the timber and got the bark at the spot where Perkins pointed out and directed him to get it.

The charge was also properly refused, because it was inapplicable to the facts of the case. There was no evidence upon which to predicate it. And it is not every refusal to state legal principles to a jury, or every erroneous charge, which will be decided to be error; they should be applicable. 3 How. 143; Ib. 338; 13 Smedes & Mar. 540. A verdict will not be set aside on account of instructions, "if right upon the law and the facts." Ib. 582.

It is also urged, as error, that the action is in debt, and the judgment in damages. In an action like the present, it is the proper entry. But if not, it amounts to a mere clerical error, and is not a sufficient ground for reversal. 2 How. 735; 4 Ib. 40; 6 Ib. 193. We gain nothing, and Mr. Perkins loses nothing, by it.

Mr. Justice YERGER delivered the opinion of the court.

This is an action of debt brought under the provisions of the statute for cutting down timber-trees on the land of the defendants in error. Hutch. Code, 280.

The facts proved made out a case falling clearly within the provisions of the statute. The timber was cut down during a series of years, for the purpose of stripping the bark off, to be used in tanning. The proof shows, that it was cut on the land of the defendants in error, by direction of the plaintiff in error,

Perkins *v.* Hackleman et al.

and the pretence, that he supposed the land belonged to the government, and not to defendants in error, will not avail him. In the first place, it is not true in point of fact, because it is in proof, that, in 1846, the defendant was shown the lines of this tract of land, told that it belonged to defendants in error, and that his hands were cutting timber on it; yet he continued cutting for several years afterwards. But to give defendant the full benefit of the defence attempted by him, it is clear that he is liable to the penalty of the statute. We think the rule laid down in Alabama under a similar statute correct. If a party intending to commit a trespass on public lands, through mistake cut down trees on the land of another person, he is liable to the penalty. 15 Ala. R. 648.

The case would be different, if, intending to cut upon his own lands, by mistake he should go beyond his own boundary, and cut timber on the land of another, supposing he was cutting on his own. In such a case, we would incline to think he would not be liable to the penalty, but only for the actual damage done.

Although the verdict and judgment are not strictly technical and formal, yet as no injury can result therefrom to the plaintiff in error, we will not disturb them.

Let the judgment be affirmed.