JOHN H. HUMPHREYS *versus* GEORGE E. NEWMAN.

E. H. purchased a parcel of land which was conveyed to his wife, and joined with her in a mortgage back to secure a part of the purchase money.   He erected a dwellinghouse and other buildings on the land, which he intended as a gift to his wife, with no design to defraud creditors.   Subsequently, he became insolvent; and one of his creditors attached the buildings and sold them on execution as his personal property.   In an action of trover, by the purchaser against the tenant in possession, who claimed as grantee of H. and wife, — it *was held:* —

*That* when an erection, though made with the consent of the owner, is with the express or implied agreement of the owner of the soil and the person making the erection, that it shall become and remain a part of the freehold, it must be regarded as real estate and not as personal property.

*That* the purchaser acquired nothing by the sale on execution, if the buildings became the property of the wife by accession and the intention of herself and husband, the judgment debtor having no title to the property, and even if the buildings were the property of the debtor, the title to them would enure to the mortgagee, and the debtor, by the covenants of his deed of mortgage, would be estopped to assert title to the land or buildings.

The mortgage having been recorded, was notice to the purchaser of the prior rights of the mortgagee.

The defendant in possession, having the equity, of redemption, represents the title of the mortgager, and, like the mortgager, would be liable to the mortgagee, in trespass, if he had removed the buildings.

This was an action of TROVER for the conversion of a dwellinghouse and outbuildings, and was submitted upon an agreed statement of facts, and depositions; the Court to draw inferences from the facts, and such of the evidence, as is legally admissible, as a jury might.

The buildings in controversy, situated on High street, in Bath, were erected by Ephraim Harding, upon land belonging to his wife whom he married in December, A. D. 1850, both of them being at that time residents of Bath. The buildings were so erected with and by the knowledge and consent of the wife, and at the time of the sheriff's sale of the same to the plaintiff hereinafter referred to, were occupied by the said Ephraim Harding and wife. The deed of the lot to Mrs. Harding makes part of the case. For the erection of these buildings, John H. Humphreys & Co., furnished materials to the amount of $453,51, taking the said Ephraim Harding's note therefor, which note was dated July 28, 1854, payable in four months. This note was indorsed to John C. Humphreys, one of said firm, and, on the sixth day of December, 1854, suit was commenced thereon, in which the buildings in controversy were attached, December 9, 1854, as the personal property of the said Ephraim Harding, and the officer's return of the attachment thereof was duly and seasonably filed and recorded in the city clerk's office in Bath, according to the statute regulating the attachment of personal property not easily removed. In this suit such proceedings were regularly had that judgment was rendered therein at the October term of the S. J. Court in Cumberland county, 1855, and, upon the execution issued thereon, the said buildings were seized and sold in season to preserve the attachment on the original writ and in conformity with the law regulating the seizure and sale of personal property on execution, and struck off to the plaintiff on the premises, for the sum of $500, he being the highest

bidder therefor. At the time of this sale, the buildings were occupied by the said Ephraim Harding and his wife, and the said Ephraim was informed of the sale and made no objection, and being in feeble health, was not removed, though the officer made a formal delivery of the buildings to the purchaser. The said Ephraim Harding remained in the house till his death, which occurred February 2d, 1856. On the 30th day of November, A. D. 1858, the plaintiff, having previously repeatedly notified the defendant that he claimed the buildings as his, finding the defendant in possession of them, made a formal demand upon him for them, and the defendant refused to surrender them, claiming them as his own. The buildings at this time were worth, to remove, $675, and it is agreed that, if the plaintiff is entitled to recover, judgment shall be rendered for $556, being the amount of the original judgment in favor of John H. Humphreys & Co., against said Harding, with interest thereon from October 23, 1855, the time of its rendition, till the rendition of judgment in this suit and costs.

The foregoing is the case as presented by the plaintiff's proof. The defendant offers to prove, and it is agreed as matter of fact that he can prove, if permitted so to do by the Court, the plaintiff objecting to all and singular the facts and evidence offered by the defendant as irrelevant, not pertinent to the issue, incompetent and inadmissible, except so far as he has himself herein before made them part of the case; that, at the time of said attachment by Humphreys, the title to said lot of land, on which said buildings were standing, was in said Harding's wife, and was conveyed to her by deed from Freeman Clark, dated March 25, 1854, which deed was duly acknowledged and recorded March 31, 1854. That, on said 25th day of March, 1854, said Harding and his wife made a joint mortgage deed of said lot back to said Clark, to secure their joint notes for $400 and interest, and said mortgage was duly acknowledged and recorded April 3, 1854, and was finally paid, and discharged by said Clark, March 5, 1861, the note secured thereby be-

ing paid by one Palmer, to whom the defendant had sold the property subject to the mortgage. Said buildings were erected in the spring and summer of 1854, the house with a cellar under it and underpinned with stone and brick, and the outbuildings adjoining and connecting with it.

On the first day of December, 1854, John B. Swanton and others, creditors of said Harding, brought sundry suits against him, and on that day caused to be attached all the real estate of said Harding in the county, which attachment was duly returned and recorded in the registry of deeds, and the actions entered and continued from term to term, until the August term, 1855, when judgment was obtained in favor of said creditors and execution issued, and thereupon on the twenty-eighth day of September, A. D. 1855, being in season to preserve the lien acquired by the original attachment, there was seized and sold on said execution in conformity with the laws regulating the seizure and sale on execution of rights of redeeming mortgaged real estate, all the right in equity which the said Harding had of redeeming the said Clark lot on the day of the original attachment; said right was sold to one Edward K. Harding, and the sum received was applied to the payment of said execution and of other executions then in the officer's hands, the receipt for which payment the defendant offers as a part of this case, viz. : — one of Merritt & Robinson, dated November 17, 1855 ; one of S. J. & W. H. Watson, dated Jan. 28, 1856 ; one of Bronson & Sewall, dated Nov. 6, 1855 — said Harding being the highest bidder therefor ; and, in pursuance of said sale, said Harding's interest in the lot aforesaid was duly deeded by the officer to said Edward K. Harding by deed, dated Nov. 17, 1855, duly acknowledged and recorded Nov. 17, 1855, which deed is offered by defendant as part of this case. Said Ephraim Harding and his wife, on the sixth day of November, A. D. 1855, by their joint deed acknowledged and recorded the same day, which deed defendant offers as part of the case, quit-claimed to said Edward K. Harding, said lot of land "with the buildings

thereon situate," which buildings are those now in suit. The defendant Newman holds under said Edward K. Harding by deed of warranty, dated June 23, 1856, and acknowledged and recorded June 26, 1856.

From the deposition of E. K. Harding, it appears that he was remotely related to said Ephraim Harding; that deponent·paid his own money to the officer, for the equity of redemption, about $650, (which sum, with the amount he paid to discharge other demands claimed as *liens* on the property, amounted to more than $1400.) Said Ephraim was doing business as a grocer and fitter out of vessels, in the years 1853 and 1854, and built parts of two vessels in those years. Told deponent that he had bought the land, and was going to build a house on it, and give it to his wife; that he was able to do so. He failed in consequence of the failure of insurance companies which had insured a vessel in which he was largely interested.

From the deposition of Mrs. Harding, it appears that she paid no part of the price of the land—it was wholly paid by Mr. Harding. He told her he had bought it for her—to build a house on for her, so that she would have a home if anything should happen to him:—That she lived near the lot and visited the house often while it was being built. Her husband did not speak of it as his, but called it her house. That she consented to the erection of the buildings in the expectation that they were to be hers. She had no means of her own to purchase the land or erect buildings.

*Shepley & Dana*, for plaintiff.

The debt of plaintiff was created by furnishing materials for Ephraim Harding to build a house and outbuildings on land of his wife, by her permission, in the spring and summer of 1854. Note therefor given July 28, 1854, payable in four months. Suit on it commenced Dec. 9, 1854, and buildings attached. Judgment obtained October term, 1855, and buildings seized and sold on execution and purchased by plaintiff. All these proceedings regular. These build-

ings were personal property of Harding. *Russell* v. *Richards*, 10 Maine, 429, and 11 Maine, 371; *Hilborne* v. *Brown*, 12 Maine, 162.

The title of the plaintiff is therefore good, and he, having demanded possession and been refused it, is entitled to judgment unless that title is defeated by the testimony in defence.

It appears that, when the buildings were erected, the land had before been mortgaged by Harding and wife to Clark. Suits were commenced by Swanton and others, creditors of Harding, December 1, 1854, and all his real estate attached. Judgment was obtained, execution issued, and Harding's right of redeeming sold, on Sept. 28, 1855, and purchased by E. K. Harding, who received a deed from the officers. These proceedings were regular.

E. K. Harding acquired no title by these proceedings. When the attachment was made of real estate of Ephraim Harding, he had no real estate in the premises.

Should it be contended that he owned the lot of land deeded to his wife because he paid for it — the answer is, that the husband paid for only $500 of the $900, the price of the land; the note for $400 was signed by his wife and she mortgaged the land to secure payment of it. The husband, by proof in defence, gave the land to his wife. There could, therefore, be no resulting trust in favor of the husband. 2 Story's Eq., § 1202.

"If a purchase be made by a husband in the name of his wife it will not be considered as an implied trust, but she will, it seems, be beneficially entitled, for a *feme covert* cannot be a trustee for her husband." 2 Maddock's Ch. Practice, 146, and cases cited in notes. Hill on Trustees, by Wharton, 98*, and notes; Adams' Eq., by Wharton, 165, note 1; *Baker* v. *Vining*, 30 Maine, 121.

The husband having no title to the land at the time of sale of the equity, the purchaser of that equity did not obtain any title. E. K. Harding obtained a title to redeem the lot by the deed made to him by Ephraim Harding and

wife on Nov. 6, 1855. This deed is silent respecting the buildings on the lot. The title might have passed by it if the buildings had not been attached eleven months before as the property of the husband. Being under attachment, if they were his personal property, he could not convey any title except subject to that attachment.

The only mode in which E. K. Harding could have obtained title to the buildings would seem to be by the conveyance to him by Ephraim Harding and wife, she being the owner of them.

She was not the owner of them.

The declarations of Ephraim Harding respecting it are not legal testimony, and must be excluded. Even if they could be received as testimony, they have no tendency to prove that the wife owned the buildings : they only exhibit a statement that "he was going to build a house, * * * also give it to his wife." Such expression of future intention could not confer any title to what did not then exist.

The testimony of Elizabeth Hodgkins, formerly the wife of Ephraim Harding, respecting his declarations of intention, is not legal evidence. If that testimony could be received, it has no tendency to prove that she owned the buildings. She says : — "he intended to give the house to me and said it should be mine. I cannot recollect just the time."

This, at most, is only an exhibition of an intention, not an act of donation. It does not appear that the buildings then existed. From a subsequent answer, it appears to have been about the time of the purchase of the land. The husband does not appear to have attempted to give the buildings to his wife after they were built. That the buildings, when built, were his, and not his wife's, is quite apparent. They were built by him with his own means, by moneys and credits. Not built by him as the agent of his wife, so that they could become her property.

As E. K. Harding did not acquire any title to the buildings, he could not convey any to defendant Newman.

*Evans & Putnam*, for the defendant.

E. K. Harding, who is the real defendant in interest, and under whom defendant Newman claims, makes his title in two ways; 1st, by deed of land *and buildings* from Ephraim Harding and wife; 2d, by sheriff's deed of the equity of redemption.

*As to the first title.* This depends entirely on the question whether the dwellinghouse was rightfuly taken on execution as the personal property of Ephraim Harding. We claim that this whole transaction was the ordinary case of a gift of both house and land by a husband to a wife, made for laudable purposes, without intention to defraud. That no fraud was intended appears from the evidence in the case. Both Harding and his wife permitted the whole property to be sold for the benefit of his creditors.

That there was no fraud in law is apparent, because, while Humphreys' note is dated July 28, 1854, the land was purchased and the deed recorded the spring before, and the cellar commenced in May; while the frame was raised July seventh and eighth, — and *so existed as a house* before the note was given.

It is claimed by plaintiff that the house was personal property, because erected by the husband on wife's land, with her "knowledge and consent." We claim that it was built as a gift to the wife; was intended when built to be a part of the realty, and by the principles of law became realty. Whether a building erected on another's land, by consent or knowledge of the owner of the land, shall be realty or personal property, is a question of intention. "*Accessione et destinatione*," is the common language of the books on the question of fixtures, that is to say, both the *accession* and the *purpose* of the accession. It is true that, in many cases, the building has been declared personal property, where it only appeared that it was erected by the "consent" or the "permission" of the owner of the land, or when the circumstances were such as are usually considered among men as *implying a consent or permission;* but in all those

cases there was nothing to rebut the presumption that it was intended on both sides that the property should continue in the builder. No case can be found where a building was, by *compulsion of law*, ever regarded as personal property, *contrary to the intentions* of all parties in good faith expressed at the time of its erection.

Counsel commented on *Osgood* v. *Howard*, 6 Maine, 454; *Pullen* v. *Bell*, 40 Maine, 314; *Wells* v. *Bannister*, 4 Mass., 514; *Washburn* v. *Sprout*, 16 Mass., 449; *Milton* v. *Colby*, 5 Met., 78; *Sudbury* v. *Jones*, 8 Cush., 189; *Fuller* v. *Fuller*, 39 Maine, 521.

The result of all these cases is, that to convert the building to personal property, there must be a contract or agreement, or intention so to do. These may be either express, or implied, as they sometimes are, from very slight circumstances. Nowhere does it appear that there is in the mere fact of "knowledge and consent" any absolute implication or presumption of law that may not be overcome; and nowhere has a building, affixed to the soil, been held personal property, where a contract, agreement, or intention to the contrary appears from the evidence to have existed in good faith cotemporary with the erection.

Besides, if Mrs. Harding gave her consent to the erection of the house, it was a qualified consent. She supposed the home to be hers while building, and whatever consent she gave was with that expectation, and that her husband so understood it is apparent from his declarations all through the case. Parties claiming under him by subsequent title cannot avail themselves of the *consent* and reject the *qualifications*.

This is an action of trover brought by a person who never was in *actual possession*. Of course, then, however weak defendant's title, plaintiff cannot prevail unless at the date of the writ he had a right of immediate possession.

At that time the mortgage was outstanding. As towards Clark the house was undoubtedly a portion of the realty, and he held it with the land under his mortgage.

If, then, Humphreys had any interest, it was not perfect till Clark's mortgage was paid. He was never in possession, and had only the same rights as a person entitled to redeem personal property. That such a person cannot maintain trover, has been decided in *Rugg* v. *Barns*, 2 Cush., 596.

He was a mere trespasser in going upon the land to demand the house, not having any authority from the mortgagee ; while Newman, being in possession as assignee of the mortgager and as tenant by sufferance; must be presumed to have been in rightful possession of all the mortgaged property by consent of Clark, the owner of the fee.

The opinion of the Court was drawn up by

APPLETON, C. J.—It appears that, on March 25, 1854, Freeman Clark conveyed to Mary E. Harding a tract of land in the city of Bath ; that on the same day Mrs. Harding and Ephraim Harding, her husband, joined in a mortgage of the same premises to said Clark to secure their joint note, given in part for the purchase money ; that Ephraim Harding, with the knowledge and consent of his wife, erected thereon a dwellinghouse and outbuildings, but with the expectation and intention on the part of both that the erections, so made, should become permanently affixed to, and a part of the realty ; that, on Nov. 6, 1855, Ephraim Harding and Mary E. Harding conveyed to Ephraim K. Harding, for a valuable and sufficient consideration, the lot before referred to, "with the buildings thereon situate," who, on June 23, 1856, deeded the same to the defendant; and that this action is brought for the alleged conversion of the dwellinghouse and outbuildings thus erected.

The plaintiff, having a demand against Ephraim Harding, on Nov. 6, 1854, commenced a suit thereon, in which the buildings in controversy were attached as personal property, obtained judgment and caused the same to be sold on execution and became the purchaser thereof. On Nov. 30, 1858, he demanded these buildings of the defendant, then in

possession, under his title already set forth, who declined to surrender the same. Whereupon this suit was commenced.

The general presumption of law is, that whatever is annexed to the soil becomes part of the same. Buildings voluntarily erected on the land of another and without the consent of the owner become part of the real estate. *Pierce* v. *Goddard*, 22 Pick., 559. If the builder has an interest in the land as the husband of the tenant in dower, the building at once becomes a part of the realty. *Washburn* v. *Sproat*, 16 Mass., 489. So if he has an interest in the soil as reversioner or remainder man. *Cooper* v. *Adams*, 6 Cush., 87. A tenant by courtesy is created by operation of law, and no buildings erected by such tenant by consent of the wife will thereby become personal property. *Doak* v. *Wiswall*, 38 Maine, 570. But if a house is erected by one man upon the land of another by his assent, and, upon an agreement express or implied, that the builder may remove it when he pleases, it does not become a part of the real estate, but remains a personal chattel. *Dame* v. *Dame*, 38 N. H., 429.

The evidence satisfactorily establishes the fact, that it was the intention of Ephraim Harding, that the buildings by him erected, were to be, and remain a part of the freehold, and thus to become the property of his wife. Nor does the proof show any fraudulent intent on his part in so doing, he being solvent at the time.

When an erection, though made with the consent of the owner, is, with the express or implied agreement of the owner of the soil and the person making the erection, that it shall become and remain a part of the freehold, it must be regarded as real estate and not as personal property. *Sudbury* v. *Jones*, 8 Cush., 184; *Murphy* v. *Marland*, 8 Cush., 578; *Fuller* v. *Taber*, 39 Maine, 521. Such is the case before us.

If the buildings became the property of Mary E. Harding by accession, and the intention of her husband and herself was that such should be the result, then the plaintiff acquired

Humphreys *v.* Newman.

nothing by his sale on execution, for the buildings sold did not belong to the judgment debtor, and this action cannot be maintained.

Even if the buildings were the property of Ephraim Harding, the title to them would enure to Freeman Clark, the mortgagee. Harding having joined in a mortgage of the premises to him, would be estopped by the covenants of his deed to assert a title to land mortgaged or the buildings erected thereon. The mortgage having been recorded, the plaintiff must be held affected with knowledge of its existence and of the prior rights of the mortgagee.

When the demand was made, the mortgage to Clark was in full force and the equity of redemption was in the defendant. It is well settled that the mortgager has no right to remove buildings or other fixtures erected by him on mortgaged premises, after the execution of the mortgage. Ephraim Harding would have been liable in trespass to the mortgagee, though out of possession, had he, Harding, removed his erections. The defendant in possession, having the equity of redemption, represents the title of the mortgager, and would have no superior rights of removal to him. He, too, would be liable to the mortgagee if he had removed these buildings. He cannot be liable to the plaintiff for declining to do what he could not legally have done. He is not to be deemed guilty of a trespass for not committing one. *Corliss* v. *McLagin*, 29 Maine, 115; *Cole* v. *Stewart*, 11 Cush., 181; *Butler* v. *Page*, 7 Met., 40.

*Plaintiff nonsuit.*

DAVIS, KENT, WALTON and DICKERSON, JJ., concurred.

BARROWS, J., having been of counsel, did not sit in this case.