CASE 50—TRESPASS—SEPTEMBER 15.

# Hogue vs. Penn.

**APPEAL FROM MARION CIRCUIT COURT.**

1. A captain of a company of mounted men, organized as State troops, is responsible for forcibly taking possession of, using, injuring, and destroying property in October, 1865, without compensation, and without the consent of the owner. The orders of an acting quarter-master did not shield the captain from responsibility.

2. An unlawful act cannot be justified by an unlawful authority or command to do it. (2 *Duvall*, 502; 2 *Bush*, 453; 2 *Cranch*, 176; 13 *Howard*, 113.)

L. H. NOBLE,                      For Appellant,

CITED—

*Story on Agency*, secs. 308–19.

13 *Howard*, 115.

2 *Cranch*, 170; *Little, &c., vs. Barreme, &c.*

*Session Acts* 1867, chap. 1571.

JUDGE HARDIN DELIVERED THE OPINION OF THE COURT:

This action was originally instituted in the Marion quarterly court, and was thence carried by appeal to the circuit court, where a trial of the case resulted in a judgment for the defendant, from which this appeal is prosecuted.

The substantial facts alleged in the petition are, that in October, 1865, the defendant, who was the captain of a company of mounted men, organized as State troops, forcibly entered into and occupied, with his men and their horses, the plaintiff's lot, in the town of Lebanon, and his stable situated thereon, and consumed

and destroyed the corn, hay, and other property of the plaintiff, and damaged and injured his premises by breaking his crib and fencing.

The defense controverted the alleged use and destruction of the plaintiff's corn, hay, and other personal property, and set up, as a bar to the action for the other trespasses alleged, that the defendant, in entering and occupying the plaintiff's premises, acted in obedience to the orders of one Captain J. E. Murrah, acting quarter-master in the State service.

The evidence is conflicting as to whether Murrah, in fact, gave such orders; but the instructions and ruling of the court, as to the legal effect of the orders, if given, present the main question to be determined on this appeal.

In passing on the several motions to instruct the jury, the court, in substance, ruled—

1. That although the defendant, with his men and horses, entered and occupied the plaintiff's premises forcibly, and without his consent, yet he was protected in doing so by the orders of the acting quarter-master.

2. That as to any trespasses upon the plaintiff's property by the men during the occupation of the premises, the defendant was not liable, unless he participated therein himself, or unless he took possession of the premises without the authority of Murrah.

We do not concur in these conclusions of law.

Waiving inquiry as to the nature and extent of the authority of a quarter-master to control the action of an officer commanding troops, in accordance with law, and without inquiring into the power of a military commander, in actual war, to take, destroy, or appropriate private property, under peculiar and extraordinary circumstances, we are clearly of the opinion that, in such a

state of case as this record presents, the appellee could not excuse himself, either of forcibly entering and occupying the appellant's premises, or of the taking and destruction of his property, by any lawful authority which he possessed, or Murrah, as quarter-master, could confer upon him. If, under any circumstances, necessity could have excused the forcible use of the appellant's private property, the record in this case discloses no such necessity; and, in our opinion, neither the appellee nor the acting quarter-master was vested with authority either to take possession of the appellant's premises without his consent, or by themselves or soldiers, acting under their command, to appropriate or destroy his property.

We are aware of no provision in any of the acts relative to the organization of the militia of this State, which attempts to confer on any officer or agent of the State the extraordinary power of taking or appropriating for public use the private property of the citizen, without consent or compensation. Certainly the exercise of such a power would be an invasion of rights secured to the citizen by both the National and State Constitutions. It is declared in the fifth article of the first amendment of the former, that "no person shall be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use without just compensation." Alike explicit and emphatic on this subject is the State Constitution, which declares, in the 14th section of the Bill of Rights, that no man's "property shall be taken or applied to public use without the consent of his representatives, and without just compensation being previously made to him."

In *Story on the Constitution, volume 3, section 1784,* the eminent author, in commenting on the clause of the

Federal Constitution above cited, says: "This is an affirmance of a great doctrine established by the common law for the protection of private property. It is founded in natural equity, and is laid down by jurists as a principle of universal law. Indeed, in a free government, almost all other rights would become utterly worthless, if the government possessed an uncontrollable power over the private fortune of every citizen. One of the fundamental objects of every good government must be the due administration of justice; and how vain it would be to speak of such an administration, where all property is subject to the will or caprice of the Legislature and the rulers."

If the ruling of the circuit court was based on the idea, that although the acts complained of were unlawful, the quarter-master's orders were sufficient to shield the appellee from personal responsibility for their commission, it was nevertheless erroneous.

It was decided by this court, in the case of the *Christian County Court vs. Rankin and Tharp*, 2 *Duvall*, 502; and also in *Terrill vs. Rankin*, 2 *Bush*, 453, in accordance with the decisions of the Supreme Court of the United States in *Little and others vs. Barreme, &c.*, 2 *Cranch*, 176, and *Mitchell vs. Harmony*, 13 *Howard*, 113, that an unlawful act cannot be justified by an unlawful authority or command to do it.

It seems to us, therefore, that the court erred to the appellant's prejudice in instructing the jury.

Wherefore, the judgment is reversed, the cause remanded for a new trial, and for further proceedings not inconsistent with this opinion.