## Case No. 12,486.

SCHULENBURG et al. v. HARRIMAN.

[2 Dill. 398.] [1]

Circuit Court, D. Minnesota. 1872. [2]

GRANT — CONSTRUCTION — RAILROAD AID — LEGAL TITLE TO THE LANDS—REVERTER—REPLEVIN — MINGLING LOGS IN BOOM — MEASURE OF DAMAGES.

1. Land grant to the state of Wisconsin to aid in the building of railroads (11 Stat. 20), construed.

2. The legal title to said lands is in the state in trust for the building of the railroads named.

3. Such lands do not, ipso facto, revert to the United States, by mere failure to build the road within the period prescribed in the act of congress. To effect the forfeiture, some act on the part of the general government evincing an intention to take advantage of such failure is essential.

4. The state has power to protect such lands from trespass, and may maintain replevin or trover for logs cut thereon by trespassers.

5. Under the legislation of Minnesota (Rev. St. Minn. p. 250), it is not necessary, to enable the state to maintain replevin where the adverse party has indistinguishably mingled logs cut upon such railroad lands with others bearing the same mark, and especially where he refuses, upon demand made to recognize the right of the state, that the state shall trace, and identify each log, for which it asks a verdict, to have been cut upon the said railroad lands.

6. Measure of damages under the statute in such cases stated.

7. Stipulation, in replevin, construed.

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]
[2] [Affirmed in 21 Wall. (88 U. S.) 44.]

This was replevin for a large quantity of saw-logs, and is one of many similar cases pending in the court. The plaintiffs [Frederick Schulenburg, Adolf Boeckeler and Louis Hospes] cut the logs upon odd sections of the lands granted by congress "to the state of Wisconsin to aid in the construction of railroads in said state," by act approved June 3, 1856 (11 Stat. 20). This act provided "that the land hereby granted shall be exclusively applied in the construction of the railroad for which it is granted and selected, and shall be disposed of only as the work progresses, and shall be applied to no other purpose whatsoever." "That the said lands hereby granted to the state shall be subject to the disposal of the legislature thereof for the purposes aforesaid, and no other;" and "shall be disposed of by said state only in the manner following—that is to say, a quantity of land not exceeding one hundred and twenty sections, and included within a continuous length of twenty miles of road, may be sold; and when the governor of said state shall certify to the secretary of the interior that any twenty continuous miles of said road are completed, then another like quantity of land hereby granted may be sold; and so, from time to time until said road is completed; and if said road is not completed within ten years, no further sales shall be made, and the land unsold shall revert to the United States." On the 5th day of May, 1864, congress "extended" the above act of June 3, 1856, "to a period of five years from and after the passage of this act," May 5, 1864 (13 Stat. 66). On the 10th day of March, 1869, the legislature of the state of Wisconsin passed an act of which the nineteenth section is as follows: "For the purpose of aiding in the construction of the railway hereby incorporated, the state of Wisconsin hereby grants and transfers unto the said company all the rights, title, interest, and estate, legal or equitable, now owned by the state in and to the lands heretofore conditionally granted to the Saint Croix & Lake Superior Railroad Company for the construction of a railroad and branches; and the said state of Wisconsin does further grant, transfer, and convey unto the said railway company hereby incorporated the possession, right, title, interest, and estate, which the said state of Wisconsin may now have or shall hereafter acquire of, in, or to any lands through gift, grant, or transfer from the United States, or by any act of the congress of the United States amending 'An act granting a portion of the public lands to the state of Wisconsin to aid in the construction of a railroad, approved June 3, 1856,' and the act or acts amendatory thereof, or by any future acts of the congress of the United States granting lands to the state of Wisconsin, so far as the same may apply to and in the construction of a railroad from Bayfield, in the county of Bayfield, in a southwesterly

direction, to the intersection of the main line of the Northern Wisconsin Railway, from the lake or river Saint Croix to Superior, to have and to hold such lands, and the use, possession, and fee in the same, upon the express condition to construct the herein described railway within the several terms and spaces of time set forth and specified in the next preceding section of this act; and upon the construction and completion of every twenty miles of said railway, the said company shall acquire the fee simple absolute in and to all that portion of the lands granted to this state, in any of the ways hereinbefore described, by the congress of the United States, appertaining to that portion of the railway so constructed and completed." Laws Wis. 1869, p. 972. The said railroad, nor any part thereof, has not been constructed by the said railway company; and congress has passed no act since May 5, 1864, above-mentioned, extending the time for building the road beyond May 5, 1869; nor has it passed an act declaring a forfeiture of the rights of the state under the said acts of June 3, 1856, and May 5, 1864, or declaring that the lands had reverted to the United States by reason of the failure to complete the railroad by the 5th day of May, 1869. The legislature of Wisconsin passed an act to protect these lands from trespassers. The defendant, Samuel Harriman, is the agent of the state of Wisconsin, duly appointed and commissioned, and as such seized logs which had been cut by the plaintiff in 1870 upon said railroad lands; and thereupon the plaintiff brought this action of replevin. The defendant claimed that the legal title to the logs was in the state of Wisconsin. The plaintiffs claimed: (1) That the state of Wisconsin had no title to the logs, because the title to the lands from which they came had, before the logs were cut, reverted to the United States; and (2) if the lands had not thus reverted, that the title thereto was in the said railroad company by virtue of the above-mentioned act of the state legislature of the 10th day of March, 1869.

Brisbin & McCleur, for plaintiffs.

C. K. Davis and Mr. Spooner, for defendant.

Before MILLER, Circuit Justice, and DILLON, Circuit Judge.

PER CURIAM. 1. We hold that the legal title to the lands granted by the act of June 3, 1856, is, by virtue of that act, in the state of Wisconsin, in trust for the building of the railroad.

2. That the lands had not reverted to the United States, there having been no judicial proceeding, no act of congress, and no other act of the general government, to take advantage of the failure to build the railroad or to declare the forfeiture.

3. That the title to the lands could be disposed of by the state only in the manner provided in the last section of the aforesaid act of congress of June 3, 1856, and that the state could not, before the building of the road, divest itself of the legal title to the lands, and that the act of the state legislature of the 10th day of March, 1869, should not be construed as intended to have that effect.

4. That as the legal title to the lands where the logs were cut was in the state of Wisconsin, it had authority to protect them from trespassers, and it would be the owner of logs cut thereon by third persons without authority.

After the testimony was concluded, the presiding justice charged the jury as follows:

MILLER, Circuit Justice. This is an action of replevin. It is admitted by counsel that the plaintiffs obtained possession of the logs under a writ of replevin. It has been stipulated by the parties that plaintiffs were in the quiet and peaceable possession of the logs before defendant seized them, and that defendant's seizure thereof, as to the manner of making it, was valid and legal.

The stipulation as to the plaintiffs' "quiet and peaceable possession of the logs" is not an admission by the defendant that the plaintiffs' possession was rightful, or that the plaintiffs were the owners. These questions were left open by the stipulation, and are to be decided by the jury under the instructions of the court.

The presumption arising on the stipulation entered into between the parties is, that the logs were the plaintiffs' property; it makes out a prima facie case for the plaintiffs. That is its only effect. It throws the burden of proof on the defendant, to show title or right of possession in himself. The defendant, as the duly commissioned agent of the state of Wisconsin, claims that the logs in dispute were cut on the railroad lands granted by congress to the state of Wisconsin, by act of congress of June 3, 1856 (11 Stat. 20).

The legal title to these lands, and the logs cut thereon without authority, is in the state of Wisconsin. Evidence has been offered by the defendant with a view to show that the plaintiffs cut logs on said lands, and that they were mingled with a large quantity of other logs having the same marks, belonging to the plaintiffs, and were in this condition while in the boom at Stillwater and when seized by the defendant.

The plaintiffs insist that the defendant cannot recover except so far as he traces and identifies each log for which he asks a verdict, to have been cut upon the said railroad lands. However it might be at common law, we instruct you that under the legislation of this state—where the logs were seized by the defendant and replevied by the plaintiffs (Rev. St. Minn. p. 250)—and the decisions of the courts in the lumber regions applicable to such controversies, that it is not necessary that the defendant should trace and identify each log; that is, if you are satisfied from the evidence

that the plaintiffs cut logs on the said railroad lands, without authority from the state, and that these logs, thus cut, were driven by the plaintiffs down the river into the boom at Stillwater, in this state, and mingled with other logs belonging to them, bearing the same marks, so that the two classes of logs could not be distinguished, then the defendant had at least a right, especially after demand of the plaintiffs, to get from that boom a quantity of said logs equal to those which he shows were cut by the plaintiffs on said railroad lands.

If you find for the defendant, the measure of his damages (under the statute of the state relating to replevin) will be the value of the logs thus traced by the defendant from the railroad lands to the boom at Stillwater, and of which defendant was in possession (as stipulated) when the suit in replevin was commenced.

NOTE. Verdict for defendant for $16,809.- 97, upon which judgment was entered, and a writ of error taken. [The supreme court affirmed the judgment of this court. 21 Wall. (88 U. S.) 44.] The other cases, by stipulation, abided the result of this. By the statute of Minnesota, mentioned in the charge, it is provided:

"Sec. 39. In all cases of wrongful or unlawful taking, detention and conversion of logs or timber, and intermingling the same with other logs and timber so they cannot be identified and separated therefrom by the owner, the rule of the common law applicable to the case of a wrongful and fraudulent confusion of goods, shall govern in determining the right of property in respect to said logs and timber."

"Sec. 40. In cases where logs or timber bearing the same mark, but belonging to different owners in severalty, have, without fault of any of them, become so intermingled that the particular or identical logs or timber belonging to each cannot be designated, each of such owners may, upon the failure of any one of them having the possession, to make a just division thereof after demand, bring and maintain against such one in possession an action to recover his proportionate share of said logs or timber, and in such action he may claim and have the immediate delivery of such quantity of said mark of logs or timber as shall equal his said share, in like manner and with like force and effect as though such quantity embraced his identical logs and timber, and no other." Rev. St. Minn. c. 32, p. 250.

Before settling the foregoing charge, the state decisions in Michigan, Wisconsin, and Minnesota, in respect to mingling logs or suffering them to become mingled with others, were examined. Stearns v. Raymond, 26 Wis. 74. Construction of congressional land grant in favor of the Union Pacific Railroad Company, see Union Pac. R. Co. v. Watts [Case No. 14,385].