May *v.* Bliss et al.

····→→⊛◉⊛←←···

ELISHA MAY *v.* EDMUND P. BLISS AND AMOS EVERETT.

The defendant was the owner of boards, which were piled in the mill yard of a saw mill, near to a pile of boards belonging to the plaintiff, and sent a man in his employment to draw away his boards, and directed him to call upon the sawyer to inform him which were the defendant's boards. The person sent having obtained information of the sawyer, and supposing he was obtaining the defendant's boards, drew away the boards of the plaintiff with those of the defendant. And it was held, that the defendant, having sent his hired man to follow such instructions, as he might obtain from the sawyer, and he having received such instructions, as induced him to take away the plaintiff's boards, it was the same, as if the defendant had given the instructions himself, and that the defendant was liable in trespass for taking the boards, whether the fault were in the sawyer, in not giving sufficiently specific instructions, or in the hired man, in not properly apprehending or not following them, the same as if he had done the whole business himself and taken the plaintiff's boards by mistake.

The plaintiff declared against A. and B. for a joint trespass. A. suffered judgment to be rendered against him by default, and judgment was rendered against B. upon trial, and damages were assessed against A. at the same amount with the judgment against B., and the case was passed to the supreme court upon exceptions taken by B. And it was held, that herein there was no error.

TRESPASS for taking a quantity of boards. The defendant Everett being an infant, under the age of twenty one years, a guardian *ad litem* was appointed, at whose request judgment was rendered against him, as by default. The defendant Bliss pleaded the general issue. Trial by the court, December Term, 1849,—REDFIELD, J., presiding.

It appeared, that one Homer, who occupied a saw mill, sawed boards for Bliss, which were afterwards piled in the mill yard. The plaintiff also owned boards, which were piled near the boards of Bliss. Bliss sent Everett, who was his hired man, with a team, to draw away his boards, and directed him to call upon Homer, and he would inform him which boards belonged to Bliss. Everett called upon Homer, who gave such directions to him, that he took away all the boards of Bliss and also the boards of the plaintiff, supposing he was following the directions of Homer, and that he was taking the boards of Bliss and none other. Subsequently, upon inquiry being made by the plaintiff, Bliss became satisfied, that he had the plaintiff's boards, and he sent word to the plaintiff, that he had found an excess among his boards of 980 feet, which he would draw back to the plaintiff, or pay him for them the price of poor hemlock. The number of feet of the plaintiff's boards, which were taken, was nearly 2000, of a poor quality of pine, but much more valuable than hemlock. Bliss also, at some time, told the plaintiff, that if he would examine the boards drawn by Everett, and find those belonging to him among them, he would draw them back, or account for them ; but the plaintiff declined making the examination, upon the ground, as the court inferred, that he did not suppose, that either he or Bliss could determine which boards had belonged to the plaintiff. There was testimony tending to prove, that Bliss had kept on hand about 1200 feet of the boards drawn by Everett, and which he supposed were those which had belonged to the plaintiff, and that they were still ready to be delivered to the plaintiff. The testimony was not entirely satisfactory, as to whether there were not more of the plaintiff's boards taken by Everett.

The court decided, that Bliss, having sent his hired man to follow such instructions, as he might receive from Homer, and he having received such instructions, as induced him to take away the plaintiff's boards, it was the same, as if Bliss had given the instructions

himself, and that Bliss was responsible, whether the fault were in Homer, in not giving sufficiently specific instructions, or in Everett, in not properly apprehending or not following them, the same as if Bliss had done the whole himself and taken the plaintiff's boards by mistake. Judgment was accordingly rendered for the plaintiff, for the value of the boards taken. Exceptions by Bliss. Damages were assessed against Everett equal to the amount of the damages for which judgment was rendered against Bliss.

*Ormsby*, for defendant, insisted, that the mistake, whether of Homer, or of Everett, was not a necessary result of the directions given by Bliss, and that therefore trespass was not the proper form of action against him; and that, the declaration being for a joint trespass, the county court erred in assessing the damages severally and rendering several judgments,—citing Cro. Eliz. 870, *Heydon's Case*, 11 Co. 6 *b*, Cro. Jac. 118, 5 Burr, 2790.

*Parker*, for plaintiff, insisted, that the county court had found the fact of a joint liability of the defendants, and that this was final,— citing *Noble* v. *Jewett*, 2 D. Ch. 36, *Strong* v. *Barnes*, 11 Vt. 221, *Kirby* v. *May*, 13 Vt. 103, *Cilley* v. *Cushman*, 12 Vt. 494, *Card* v. *Sargeant*, 14 Vt. 393, Steph. N. P. 2635, Minot's Dig. 680, *pl.* 1, Archb. N. P. 300, 304;—that Everett was acting as the agent and servant of Bliss, and consequently they were co-trespassers,—citing Steph. N. P. 2337, 2635, *Brown* v. *Lent*, 20 Vt. 529, 2 Greenl. Ev. §§ 614, 621, Archb. N. P. 297, 365, 307;—and that really there had been but one assessment of damages, and that jointly against Everett and Bliss; but that, if the judgments were several, the plaintiff had the right of election of the best,—citing 2 Greenl. Ev. 277. *Heydon's Case*, 11 Co. 5, *Halsey* v. *Woodruff*, 9 Pick. 555, 1 Sw. Dig. 660, Archb. N. P. 399.

By THE COURT. We think the decision of the court below, upon the main question of the liability of Bliss, and the reasons assigned in the bill of exceptions are correct. Indeed, the question as to the participation of Bliss in the act of Everett is chiefly matter of fact; and the case having been tried by the court, and they having found his participation, it is difficult to revise that decision, in the matter of law, without reversing also the finding of the facts. But

to the extent of the reasons stated by the county court, this court see no reason to doubt their perfect soundness.

In regard to the judgment being several against the defendants, it does not appear, that it was so, in the county court. But this court having decided, in two cases in the county of Washington, that one joint *tort-feasor* may review the case, or carry it to this court by exceptions, after it is ended as to others, of course it must follow, that this may be done, without opening the case as to the other; otherwise he might, through the instrumentality of other joint defendants, obtain a judgment in his favor after a final judgment against him;—the effect of all which is, doubtless, that the judgment was joint in the county court. But one party only taking exceptions, the case became final as to the other, and it is here only as to Bliss. Upon this point see *Sheple et al.* v. *Page et al.*, Washington Co., March Term, 1848, not yet reported, but reported at a subsequent term upon another point; also *Paine et al.* v. *Tilden et al.*, 20 Vt. 554. Judgment affirmed.