JOSEPH W. SMALL *v.* FRANCIS P. BALL AND ORICK BALL.

*Trespass. Master and Servant. Evidence.*

The plaintiff owned the northerly part of lot No. 9, which adjoined lot No. 10, owned by H. H. sold some ash timber standing on his lot, to one of the defendants, to be worked into scythe snaths, and then sold the lot to F., reserving said timber. Afterwards, said defendant hired B., the other defendant, to cut the timber so purchased, and split and shave the same into scythe sticks, and advised him to employ F., the owner of the land, to cut and haul out the trees, as that would save any trouble about breaking down and injuring other timber; and B. employed F. accordingly. B. was unacquainted with the lines of said lots, the division line of which was in

fact in dispute, and was unacquainted with the locality where said timber was, and it was not pointed out or particularly described to him by the other defendant. B. relied upon F. to cut the timber in the right place, but no particular directions were given F. where to cut the timber. F., undesignedly, cut some timber on the plaintiff's land, and such timber was received and used by the first named defendant, and F. was paid for cutting the same. Neither defendant knew F. had cut timber on the plaintiff's land, until after this suit was commenced, and after the timber had been shipped to market. *Held*, that the defendants were liable in trespass for the timber thus cut on the plaintiff's land.

The question was whether the north-east corner of No. 9 was a certain stake and stones, or what was called the "I. N. P." corner, 22 rods further south. The defendants claimed the latter, the plaintiff the former. The defendants introduced a witness who once owned No. 9, and lived near it twelve years, who testified that he knew where they called the north-east corner and the south-east corner of said lot; that the south-east corner was a stake and stones, and he thought the north-east corner was when he first knew it; that he was upon the ground a few days before he testified, and thought he could go right to the north-east corner when the ground was bare; that he was taken to the corner called the stone corner, but he did not think he ever saw that before; that he was then taken to the "I. N. P." corner. The defendants then put the following question to the witness: "From your knowledge of lot No. 9, the lines and corners and the surroundings of the corners when you lived in that vicinity and owned that lot, and from your recent visit to the lot and the examination you made, where was the stake-and-stones north-east corner you speak of existing when you owned the lot, in reference to the 'I. N. P.' corner?" A. "If I had gone there alone, I should have looked for a corner about a rod or two south of the "I. N. P." corner. If the ground had been bare, I could have told better; the snow was some three feet deep; some tops in there; taking the snow and tops, it didn't look as I expected it would." The referee found the "I. N. P." corner to be the true corner. *Held*, that said question and answer were admissible.

TRESPASS *qua. clau.* The case was referred, and the referee made the following report:

"The plaintiff owned the northerly portion of lot No. 9 in the third range of lots in the town of Stratton, having purchased said lot on August 14, 1869. C. O. Holden then owned lot 10 in the same range, lying northerly of and adjoining lot 9. In the summer or fall of 1869, Holden sold a quantity of ash timber standing on lot 10, to the defendant Francis P. Ball, and subsequently sold the lot to Lewis Foot, reserving said timber. The said Francis purchased said timber to work into scythe snaths, and employed the defendant, Orick Ball, in the summer of 1870, to cut it, and split and shave the same into scythe sticks, and advised him to employ the owner of the land to cut and haul out the trees, as that would save any difficulty that might arise from breaking down and injuring other timber. The agreement with Orick was, that he was to cut the timber that the said Francis purchased of said Holden. Orick was unacquainted with the locality where

the timber was, and it was not pointed out or particularly described to him by Francis. Having made the contract to get out said scythe sticks, Orick made an agreement with said Foot, who then owned the land on which the timber stood, to cut and haul the same out to a suitable place near by, where it was split and shaved. As the said Orick was unacquainted with the lot lines, he relied upon Foot to cut the timber upon the land Foot then owned, and not elsewhere. No particular directions were given to Foot, as to where the timber was to be cut. Foot did, though not designedly, cut some trees on the lot belonging to the plaintiff; and the timber which he cut was all received and used by the said Francis, and the said Foot was paid by said Orick for cutting the same. Neither of the defendants knew that Foot had cut over on the plaintiff's land, until the service of the writ in this suit, and after the timber and scythe sticks had been removed and transported to Springfield, or elsewhere, to be finished.

"Two lines running westerly from the north-east corner of the plaintiff's lot, were claimed and contended for. The plaintiff insisted that the line ran west from a pile of stones, called on the the trial the stone corner, and so indicated on plans used by the parties; and the defendants' claimed and insisted that the corner called the I. N. Pike corner, was the true corner, and that lots 9 and 10 were bounded by a line starting from that corner. There is considerable doubt from the evidence, which of the two lines or corners is the correct one; but I think the evidence preponderates in favor of the I. N. Pike corner, so called, which is 22 rods south of the stone corner. I therefore find a line running westerly from the I. N. Pike corner to be the true line between said lots, and that the said Foot cut south of this line, and upon the plaintiff's land, thirty-five ash trees, which I find were worth twelve dollars, and that the plaintiff is entitled to recover that sum, and interest thereon from August 1, 1870, making the sum of $13.94, subject to the opinion of the court upon the facts reported.

＊　　＊　　＊　　＊　　＊　　＊　　＊

"William S. Styles was called as a witness on the part of the defendants, and testified that he had resided in Stratton near the disputed territory—moved from there 18 years ago; that he lived near the land, on the farm that Foot now owns, twelve years; that a little while before he left there, he sold it to Mr. Holden; that he knew lot No. 9—the Small and Ellis lot; that he knew where they called the north-east corner and south-east corner of said lot; that he once owned the whole lot—purchased it in 1847 and sold the south part to Ellis in 1852; that the south-

east corner was a stake and stones, and he thought the north-east corner was a stake and stones when he first knew it; that he was there a few days ago, and that he thought he could go right to the north-east corner when the ground was bare; that he was taken to the corner called the stone corner, but he did not think he ever saw that corner before; that he was then taken to the I. N. Pike corner. The defendants' counsel then put the following question to the witness: 'From your knowledge of lot No. 9, the lines and corners and the surroundings of the corners when you lived in that vicinity and owned that lot, and from your recent visit to the lot and the examination you made, where was the stake and stones north-east corner you speak of existing when you owned the lot, in reference to the I. N. Pike corner?' A. 'If I had gone there alone, I should have looked for a corner about a rod or two south of the I. N. Pike corner. If the ground had been bare, I could have told better; the snow was some three feet deep; some tops in there; taking the snow and the tops, it didn't look as I expected it would.' This question and answer were objected to, and received under objection."

The court, at the April term, 1873, BARRETT, J., presiding, rendered judgment on the report, *pro forma*, for the defendants; to which plaintiff excepted.

*C. N. Davenport*, for the plaintiff.

The cutting of thirty-five ash trees upon the plaintiff's land, though uninclosed, without his consent, was an act of trespass. Whoever directed, counseled, advised, aided, or took the benefit of it when done, is equally a trespasser with him who applied the axe, or hauled the timber from the close. Nor is it material that the acts complained of were not designedly done by the defendants or their servant. Where the act is unlawful, the motive or intent is never material, *civiliter*. 1 Chit. Pl. 147, 205; 2 Greenl. Ev. § 621; 1 Swift's Dig. 514; *Higginson* v. *York*, 5 Mass. 341; *Cole* v. *Fisher*, 11 Mass. 137; *Williams* v. *Sheldon*, 10 Wend. 654; *Leame* v. *Bray*, 3 East, 593; *Covell* v. *Laming*, 1 Camp. 497; *Underwood* v. *Hewson*, 1 Stra. 596; Bac. Abr. Trespass, F.; *May* v. *Bliss et al.* 22 Vt. 477; *Hill* v. *Morey*, 26 Vt. 178; *Langdon et al.* v. *Bruce*, 27 Vt. 657; *Andrus* v. *Howard*, 36 Vt. 248.

62

The relation of Foot to the defendants was that of a servant or agent, and which, is not material, for the consequences of the relation are the same in this respect. The master or principal is liable for every act done by the servant or agent in the course of his employment. The universal rule is, that whether the act of the servant or agent be of omission or commission, whether his negligence, fraud, deceit, or even willful misconduct, occasion the injury, so long as it be done in the course of his employment, his master or principal is responsible in damages to third persons. 1 Bl. Com. 430 ; Reeve Dom. Rel. 356 ; Sch. Dom. Rel. 636 ; Story Agency, §§ 452, 454 ; Sherman & Redf. Negl. §§ 65, 68, n. 5 ; *Grinnell* v. *Phillips*, 1 Mass. 535 ; *Southwick* v. *Estes*, 7 Cush. 385 ; *Bush* v. *Steinman*, 1 B. & P. 404 ; *Waland* v. *Elkins*, 1 Stark. 272 ; *Andrus* v. *Howard, supra.* All the cases where the master or principal has been held excused for the acts of the servant or agent, will be found, upon examination, to be cases where the latter were acting outside the course of the employment or scope of the agency.

The question put by the defendants' counsel to Styles, was improperly admitted. It called for the witness's opinion of the authenticity of the I. N. Pike corner, which the referee found to be the correct one. How much that finding was induced by Styles's opinion that the true corner was within a rod or two of the Pike corner, it is impossible to say. If the evidence was improper, it should have been excluded. *Oakes* v. *Weston*, 45 Vt. 430.

*C. B. Eddy*, for the defendants.

The testimony of William S. Styles was admissible.

Upon the facts reported, the defendants are entitled to the judgment of the court below. Neither of defendants entered upon land of the plaintiff ; neither of them cut or drew away any timber therefrom ; they did not authorize Foot to do so. The act of Foot was not the natural and probable result of directions given to him by them. No directions that they ought to have given, were neglected to be given. They did not adopt or assent to the act. Previous to the commencement of this suit, they did not

know that the act had been done. The relation of master and servant did not exist between the defendants and Foot, in the sense necessary to make them liable for the trespass of Foot, committed under the circumstances found by the referee. *Clark* v. *Vt. & Canada R. R. Co.* 28 Vt. 103 ; *Cuff* v. *Newark & N. Y. R. R. Co. et al.* 18 Am. L. Reg. 541 ; *O'Rourke* v. *Hart*, 11 Am. L. Reg. 567. Foot was a subcontractor, and not the servant of either of the defendants.

If we assume the relation of master and servant did exist between Orick and Foot, then we say, in order to make Orick liable, it must appear, as stated by ALDIS, J., in *Andrus* v. *Howard*, 36 Vt. 251, that the act was done, 1st, " by the express command of the master " ; or, 2d, " that it was the natural and probable result of orders given to the servant " ; or, 3d, " that the act was done by the servant in the business of the master, which the servant was expected to do, and while he was acting in good faith, and in the exercise of ordinary care," &c. The case at bar has none of these elements, and does not fall within the doctrine of *Andrus* v. *Howard*, nor within that of *May* v. *Bliss et al.* 22 Vt. 477.

The opinion of the court was delivered by

PIERPOINT, Ch. J. It appears from the report of the referee that in 1869 one Holden was the owner of lot No. 10 in Stratton, and the plaintiff was the owner of lot No. 9 adjoining ; that Holden sold a quantity of ash timber standing on No. 10 to said F. P. Ball, to be cut and taken off by Ball. After the sale of said timber, Holden sold lot 10 to one Foot, reserving Ball's right to the said timber. Said F. P. Ball then made an arrangement with his brother Orick to cut and draw out said timber for him and split it, preparatory to its being made into scythe snaths, advising him, Orick, at the same time to get Foot to cut and draw out the timber, so as to avoid any difficulty that might otherwise arise from breaking down and injuring other timber standing on the land. Orick made the arrangement with Foot, who proceeded to cut the timber for the defendants. At this time, neither of the parties knew where the line between lots 9 and 10 was—in fact, it was in

dispute.    In cutting this timber for the defendants, Foot igno-
rantly cut a number of ash trees that were standing on the plain-
tiff's land, and drew them out for the defendants, who received
and used them, supposing them to be a part of F. P. Ball's
purchase ; and it is for this trespass that this action is brought.

That Foot would be liable, is not questioned ; but these defend-
ants insist that they are not liable in this action for the trespass
committed by Foot.

From the facts reported, we think that it is quite manifest that in
cutting the timber, Foot acted simply as the agent or servant of
the defendants.    He had no interest in the timber, and no right
or authority to cut or interfere with it, except such as he derived
from the employment by the defendants ; and stood in the same
relation to the timber, and the defendants, that he would have
stood in, if the timber had been standing on another man's land.
The defendants did not know where the lines of the lot were, but
supposed Foot did ; and, instead of pointing out the timber or the
line, to Foot, they left it to him to determine ; and they are as
much responsible for Foot's mistake in the matter, as though they
had made it themselves.    Foot was employed by Orick Ball upon
the suggestion of F. P. Ball, and understood that he was cutting
and getting out F. P. Ball's timber, and in doing what he did, he
was acting simply as the servant of the defendants, and was act-
ing strictly within the scope of his employment.    When cutting
the trees in question, he supposed he was cutting F. P. Ball's
trees, and cut them as the servant of the defendants.    He did not
willfully go outside of his employment to do an unlawful act.

We think this case comes strictly within the principle recognized
by this court in *May* v. *Bliss*, 22 Vt. 477, and *Andrus* v. *Howard*,
36 Vt. 248.    This principle is not at variance with the case of
*Clark* v. *Vt. & Canada R. R. Co.* relied upon by defendants.
In that case, the act complained of was not done by the employes
in the course of their employment, but was entirely outside of it,
and off the line of the road on which they were employed, and
the act of leaving down the bars of Clark was when they were
going across Clark's field for water for their families, and to

drink—a matter that had no direct connection with the work they were employed to perform.

We think there was no error in admitting the testimony of Styles. The *pro-forma* judgment of the county court is reversed, and judgment for the plaintiff for the value of the timber cut, as found by the referee, with interest and cost.