Wash, J.,
delivered the opinion of the Court.
This was an action of trover brought in the Crawford Circuit Court hy the plaintiffs in error, against the defendant in error, for a quantity of cord wood. The defendant pleaded not guilty and had a verdict and judgment, to reverse, which the plaintiffs below now prosecute their writ of error in this Court. At tne trial two bills of exception were taken, from which it appears that the facts are, in substance, that Snelson, the defendant in error, lived on public land in the neighborhood of iron works belonging to the plaintiffs, wtio being desirous to cut down wood to be made into coal for the use of their furnace, sent an agent for that purpose to Snelson’s house and informed him of the fact: Snelson said he wished to reserve three or four acres for a patch to his own use, and went with the plaintiffs’ agent and marked out the ground he wished reserved: the plaintiffs then proceeded to cut the wood, and during the months of January and February, 1833, did cut and cord up five or six hundred cords, about 120 or 130 of which were cut on the three or four acres which Snelson had expressed a wish to reserve. The wood so cut and corded remained upon the land until some time in the spring of 1833, when the plaintiffs’ agent wentto the place where the wood was, to make preparation for converting it into coal,; the defendant then informed him that he had entered the land and claimed the whole of the wood, and warned him not to meddle with it at his peril. It appeared that the defendant had used a portion of the wood and claimed all the balance because he had entered the land. That the defendant on the 16th of March, 1833, paid to the Receiver of the Land Office at Jackson, fifty dollars in full for the south-east quarter of the south-west quarter of section No. five, township No. thirty-seven, north, of range No. five, west, containing forty acres, and took his receipt for the money so paid, which receipt was read in evidence upon the proof of the signature of the Receiver hy the deposition of a witness. A witness also swore that the wood in dispute was cut upon the identical forty acres entered hy Snelson, but could not state in what township or range the forty acres entered by Snelson were situate. Upon this state of facts the counsel for the defendant moved the Court to instruct the jury to find a verdict for the defendant, which instruction was given by the Court to the giving of which the plaintiffs ohjected and excepted. The counsel *279 for the plaintiffs then moved the Court to instruct the jury that although they might believe from the evidence that the wood was cut and corded upon the land which was afterwards entered by the defendant, such entry did not give the defendant any right to the wood which was so cut and corded up and then in possession of the plaintiffs, which last instruction was also given. The deposition of the witness, proving the signature of the Receiver to the receipt given in evidence, as also the receipt itself, was objected to by the counsel for the plaintiffs on the trial in the Circuit Court; and several questions have been raised in this Court, growing out of their admission, which need not be noticed, since the questions arising out of the instruction given for the defendant, dispose of the matter.
First. Was the possession of the plaintiffs of the wood cut and corded up, such possession as will maintain trover, for property, the title to which arises from the hare possession ?
Second. Did the proof of title in the United States, to the land on which the wood was cut and corded up, at the time it was so cut and corded, defeat the plaintiffs’ right of action ? These are questions of great interest to this community: the magnitude and importance of which can be duly appreciated by those only who Irnow or will look to the condition of the new States. The counsel on both sides have argued them with great ability. Eor the defendant in error it is contended, that the law regulating the action of trover is old and well settled; that the plaintiff in trover must prove property in himself; that possession is hut prima fads evidence of title which is rebutted by proving property in a third person, or that the possession on which the plaintiff relies was acquired tortiously; that in this case the plaintiffs were committing trespass in the act of cutting the wood, and could not therefore acquire property by theirtortious possession ; or elsp, that the properly in the wood remained in the United States, being owners of the land on which the trees were growing at the time they were cut down, and the title to the trees continuing in the wood cut and corded up; or else, that the plaintiffs must show actual possession of the wood, within some enclosure, or such possession as springs from showing title to the land on which it was cut and corded in order to maintain their action, &c. For the plaintiffs in error it is insisted, that trover will lie wherever trespass will; that a qualified or special property is sufficient; that such a property arises out of every peaceable possession; that possession is sufficient against a mere wrong doer or stranger, and against all the world except the true owner; that it is not sufficient merely to prove property in a third person in order to defeat the action, but that it must be shown also, that the title oí such third person is adverse to and inconsistent with the right of property as derived from peaceable possession ; that whoever is answerable over to the true or general owner, may may maintain the action; that bailees, carriers, the finders of goods, certified bankrupts, fee., may maintain trover, and that upon this principle one trespasser who has obtained possession may recover against another; that the policy of government has been uniform to encourage rather than punish those who make settlements on public land; that although such settlements are made without authority of law, and are, strictly speaking, trespasses, yet that such trespasses (so styled in the law) are always waived, or seldom if ever complained of, but on the contrary are regarded with favor and become the meritoriou* cause of securing to the trespasser the right of the soil at a reduced price. Hence arise our pre-emption .laws enacted and extended from year to year, &c,, &c. Nu *280 merous authorities have been cited by counsel on both sides in support of their respective positions; we shall not attempt to examine and apply or even to note them.
The principles of the law as settled inEngland and the old States, are well established ; th<- difficulty we experience arises from the novelty of the subject and the proper application of settled principles to it. The possession and property acquired by the (¡o sty’e 1) trespassers on public land are new in the law, are peculiar to the new States, and have not been known in the English Courts. The qualified or speciaj property is not that of the bailee or a trustee expressed or implied as defined in the books, nor is the possession that of a meie wanton trespasser or wrongdoer.
In most of the new States, the title to four-fifths of the soil is yet in the United Slates. Many of our most flourishing settlements are mostly or in great part on public lands. Rich mines are discovered and industriously wrought from day to day where not an inch of the soil has been parted with by the government, nor even a chain stretched towards the preparatory surveys which are deemed necessary to the proper disposition of the public domain. What would be the consequence if the produce of labor so circumstanced, the possession of mineral dug up, of crops cultivated, of wood cut and corded, &c., were left to be scrambled for and seized upon by the strong or cunning without the help of law? It is manifest that a sort of predatory war would soon be waged throughout our frontier settlements. We think then that the better doctrine will beto allowa recovery in such cases, and leave the first trespasser to answer over to the government. The judgment of the Circuit Court is therefore reversed with costs, and the cause remanded.