Hugh J. Jewett, receiver of the Erie Railway Company, appellant,

*v.*

Sigmund Dringer and Henry Bowman, respondents.

1. If a party having charge of the property of others, so confounds it with his own that the line of distinction cannot be traced, all the inconvenience of the confusion is thrown upon the party who produced it, and it is for him to distinguish his own property or lose it.

2. A junk dealer, by fraudulent collusion with the employes of a railroad corporation, obtained large quantities of old iron &c. at much less than the actual weight or value. On delivery it was thrown indiscriminately on other heaps of old iron &c. belonging to him, so as to be indistinguishable.—*Held,* that he must forfeit the whole mass to the company.

On appeal from a decree of the vice-chancellor, reported in *Jewett* v. *Dringer,* 2 *Stew.* 199.

Note.—To work a forfeiture of the whole mass, where one has confused his own goods with those of other persons, two things are requisite, (1) that the confusion be made fraudulently, and (2) that after such confusion the articles be incapable of identification or apportionment.

I. *No forfeiture is caused by an involuntary mixture or accession.*

If A. turn his sheep among B.'s, A.'s creditors cannot levy on B.'s part of the whole flock (*Kingsbury* v. *Pond,* 3 *N. H.* 513; see *Wildey* v. *Cox,* 25 *Mich.* 116); nor, by cattle being confounded and driven away with others on the highway (*Young* v. *Vaugh,* 1 *Houst.* 331; *Brooks* v. *Olmstead,* 17 *Pa. St.* 24; *Brownell* v. *Flagler,* 5 *Hill* 282; *Van Valkenburgh* v. *Thayer,* 57 *Barb.* 196; *Wellington* v. *Wentworth,* 8 *Metc.* (*Mass.*) 548; *Brown* v. *Boyce,* 68 *Ill.* 294). Where cattle trespassing mingled with those of the plaintiff, and communicated to them a dangerous disease,—*Held,* admissi-

Jewett v. Dringer and Bowman.

*Mr. R. Wayne Parker* and *Mr. Cortlandt Parker*, for appellant.

*Mr. T. N. McCarter* and *Mr. S. Tuttle*, for respondents.

Dodd, J.

Hugh J. Jewett, the complainant in this suit, was appointed, in May, 1875, receiver of the Erie Railway Company, and as such receiver filed his bill of complaint, in April, 1876, against the defendants, Sigmund Dringer and Henry Bowman. Dringer was a junk dealer in the city of Paterson, and began, in April, 1873, to buy, of the company, old iron or waste material, and continued so to do to within a few days before the filing of the bill. The defendant, Bowman, was the company's purchasing agent, and had also the further duty of making sales of the waste materials, of which large quantities were constantly being accumulated at the company's shops in Jersey City, Susquehanna, Elmira and elsewhere. The bill charged both defendants with fraud

ble as affecting the damages (*Anderson* v. *Buckton,* 1 *Str.* 192; *Barnum* v. *Van Dusen,* 16 *Conn.* 200; see *Jeffrey* v. *Bigelow,* 13 *Wend.* 518; *Cooke* v. *Waring,* 2 *H. & C.* 332; *Mullett* v. *Mason, L. R.* (1 *C. P.*) 559). Pelts piled by a debtor on those of another, will not render the latter's pelts liable to the former's creditors (*Gillman* v. *Hill,* 36 *N. H.* 311); or, pork and lard so commingled (*Huff* v. *Earl,* 3 *Ind.* 306; see *Buckley* v. *Gross,* 3 *B. & S.* 566); or, grain (*Starr* v. *Winegar,* 3 *Hun* 491; *Low* v. *Martin,* 18 *Ill.* 286; *Nowlen* v. *Colt,* 6 *Hill* 461; *Seymour* v. *Wyckoff,* 10 *N. Y.* 213; *Lewis* v. *Whittemore,* 5 *N. H.* 366; *Wilson* v. *Nason,* 4 *Bosw.* 155; *Samson* v. *Rose,* 65 *N. Y.* 411; *Kauffmann* v. *Schillinger,* 58 *Mo.* 218; *Rahilly* v. *Wilson,* 3 *Dill.* 420; *Sims* v. *Glazener,* 14 *Ala.* 695; *Inglebright* v. *Hammond,* 19 *Ohio* 337; *Morgan* v. *Gregg,* 46 *Barb.* 183; *Pierce* v. *O'Keefe,* 11 *Wis.* 180; *Adams* v. *Meyers,* 1 *Sawy.* 306; 6 *Am. Law Rev.* 450; *Thompson* v. *Conover,* 1 *Vr.* 329, 3 *Vr.* 466; *South Australian Ins. Co.* v. *Randall, L. R.* (3 *P. C.*) 101; *Johnston* v. *Brown,* 37 *Iowa* 200); or, oil in tanks (*Wilkinson* v. *Stewart,* 85 *Pa. St.* 255); or, hay (*Stock* v. *Stock, Poph.* 38; *Robinson* v. *Holt,* 39 *N. H.* 563); or, earth taken from the plaintiff's land (*Riley* v. *Boston Water Power Co.,* 11 *Cush.* 11; see *Mather* v. *Trinity Church,* 3 *Serg. & R.* 509; *Muzzey* v. *Davis,* 54 *Me.* 361; *Connecticut R. R.* v. *Holton,* 32 *Vt.* 43; *Northam* v. *Bowden,* 11 *Exch.* 70; *Higgon* v. *Mortimer,* 6 *Car. & P.* 616); or, if the confusion be caused by the action of a freshet (*Moore* v. *Erie Railway Co.,* 7 *Lans.* 42; *Sheldon* v. *Sherman,* 42 *Barb.* 368, 42 *N. Y.* 484; see *Gentry* v. *Madden,* 3 *Ark.* 127; *Washburn* v. *Gilman,* 64 *Me.* 163; *Rogers* v. *Judel,* 5 *Vt.* 223; *Foster* v. *Juniata Bridge*

Jewett v. Dringer and Bowman.

in these purchases of Dringer, alleging in particular one transaction in which seventeen hundred tons of old car-wheels were obtained for nineteen dollars per ton instead of twenty-two dollars per ton, and further alleging in general that large amounts of material had been delivered to Dringer fraudulently, by the connivance of Bowman, of which no account had been rendered to the company, and for which nothing had been paid. Discovery and account were prayed for from both defendants; also a writ of *ne exeat* against Bowman and an injunction against Dringer restraining him from disposing of such material. Both writs were issued on the filing of the bill and affidavits. The answer of Dringer was filed April 25th, 1876.

On the 4th of May, 1876, a petition was filed by the receiver, setting forth that discoveries of additional fraudulent transactions had been made since the filing of the bill, specifying the same, and praying that a receiver might be appointed to take possession of the material in Dringer's yards, and, on the 24th of the same month, E. N. Miller was

Co., 16 *Pa. St.* 393); or, by a tempest (*Spence* v. *Union Ins. Co.*, *L. R.* (3 *C. P.*) 427; see *Barker* v. *Bates*, 13 *Pick.* 255; *Whitwell* v. *Wells*, 24 *Pick.* 25; *Proctor* v. *Adams*, 113 *Mass.* 376; *Rogers* v. *Gilinger*, 30 *Pa. St.* 185; *Jones* v. *Moore*, 4 *Y. & C.* 351, 356; but see, also, *Buckout* v. *Swift*, 27 *Cal.* 433; *Waterman* v. *Dutton*, 6 *Wis.* 265, 276); or, by the effect of a fire (*Buckley* v. *Gross*, 3 *B. & S.* 566; see *Pope* v. *Garrard*, 39 *Ga.* 471; *Curry* v. *Schmidt*, 54 *Mo.* 515); or, by any natural cause (*State* v. *Burt*, 64 *N. C.* 619; see *Salisbury* v. *Herchenroder*, 106 *Mass.* 458; *Lehigh Bridge Co.* v. *Lehigh Coal Co.*, 4 *Rawle* 9; *Broom's Max.* 171).

In *Hill* v. *Robison*, 3 *Jones* (*N. C.*) 501, ten sacks of salt were bought and paid for by B. with the funds of A., and at the same time B. bought and paid for five sacks with his own funds; all the sacks were delivered to him unmarked, and, without separating any of them, B. delivered all of them to C., his creditor, with instructions to deliver ten of them to A. C. converted them all to his own use.—*Held*, that A. could not maintain trover against C., because he could show title to no specific property.

In *D'Eyncourt* v. *Gregory*, *L. R.* (3 *Eq.*) 382, certain tapestries bought by a testator, but hung, after his death, by the tenant in tail, were held not to have become annexed to the realty, but to belong to the executor.

In *Sharp* v. *United States*, 12 *Ct. of Cl.* 638, large quantities of cotton belonging to different owners, had been captured by the federal army; part of it was destroyed, part used, and all marks to identify the

appointed such receiver.    Upon arguments afterwards had before the chancellor on the several answers of Bowman and Dringer, the writ of *ne exeat* was discharged, and the motion on behalf of Dringer to have the injunction and receivership set aside, was denied.    Afterwards, and before the taking of the evidence, the bill of complaint was amended, and new answers were filed by the defendants.

The matters of fact asserted by the complainant, and to which the evidence was directed, are included in the general statement that the defendant, Dringer, obtained from the employes of the company, under the pretence of purchases, large quantities of waste material far beyond the amounts actually purchased, and also that, under the pretence of purchasing one class of material, he possessed himself of another class, superior in quality and value to that accounted for, thus defrauding the company both in the weights and the character of the material obtained; and that Bowman, during the time he was purchasing agent, was the principal one of the company's employes responsible for the fraud.

---

remainder lost.—*Held*, that each owner was entitled to his proportion of the remainder.

An owner of trees does not lose his property by a trespasser converting them into timber (*Mo.* 20; *Pierrepont* v. *Barnard*, 5 *Barb.* 364; *Final* v. *Backus*, 18 *Mich.* 218); or, into rails and posts (*Snyder* v. *Vaux*, 2 *Rawle* 423; *Millar* v. *Humphries*, 2 *A. K. Marsh.* 446); or, into railroad ties (*Smith* v. *Gouder*, 22 *Ga.* 353; *Lake Shore R. R.* v. *Hutchins*, *Sup. Ct. Ohio, Dec.* 1877, 6 *Cent. L. J.* 436); or, into staves (*Heard* v. *James*, 49 *Miss.* 236); or, into fire-wood (*Halleck* v. *Mixer*, 16 *Cal.* 574; *Moody* v. *Whitney*, 34 *Me.* 563; *Brewer* v. *Fleming*, 51 *Pa. St.* 102); or, into shingles (*Betts* v. *Lee*, 5 *Johns.* 348; *Chandler* v. *Edson*, 9 *Johns.* 362; *Rice* v. *Hollenbeck*, 19 *Barb.* 664; see *Rockwell* v. *Saunders*, 19 *Barb.* 473; *Bennett* v. *Thompson*, 13 *Ired.* 146); or, into a flat-boat (*Burris* v. *Johnson*, 1 *J. J. Marsh.* 196; but see *Potter* v. *Mardre*, 74 *N. C.* 36); or, saw-logs into boards (*Brown* v. *Sax*, 7 *Cow.* 95; *Baker* v. *Wheeler*, 8 *Wend.* 505; *Davis* v. *Easley*, 13 *Ill.* 192; see *Pierce* v. *Schenck*, 3 *Hill* 28; *Gregory* v. *Stryker*, 2 *Denio* 628); or, a raft of logs into fire-wood (*Eastman* v. *Harris*, 4 *La. An.* 193); or, wood into coal (*Riddle* v. *Driver*, 12 *Ala.* 590; *Curtis* v. *Groat*, 6 *Johns.* 169); or, corn into whisky (*Silsbury* v. *McCoon*, 3 *N. Y.* 379, 4 *Denio* 332); or, hides into leather (*Hyde* v. *Cookson*, 21 *Barb.* 92; see *Salmon* v. *Horwitz*, 2 *Am. Law Reg.* 640); or, hides deposited in vats (*Bond* v. *Ward*, 7 *Mass.* 123; see *Brakely* v. *Tuttle*, 3 *W. Va.* 86); or, leather converted into saddles (*Dunn* v. *Oneal*, 1 *Sneed* 106; in this case, however, there was a bailment; see *Arnott* v. *K. P. R. R.*, 19 *Kan.* 95).    Oil

Jewett v. Dringer and Bowman.

The material in question consisted of old iron, brass, copper, lead, zinc and white metal. Of some of these there were several varieties, differing in solidity and value; such as car-wheels, axles, tires, grate-bars, castings, machinery, boiler-scrap, tanks, ash-pans, etc. A large part of what was obtained by Dringer was denominated *wrot* scrap, which is also classified under several heads in quality and value. The material said to have been fraudulently obtained by Dringer came almost entirely from the company's shops at Susquehanna, though material purchased by him was sent also from the shops at Jersey City, Elmira and Port Jervis. The goods were sent in the company's cars, loaded and weighed at the shops by the company's employes. The cars are open boxes of nearly uniform size. At Susquehanna the employe who marked in the yard the weight of the car before and after being loaded, took his memorandum thereof to the store-room and entered the weights in the blotter, from which another employe made up the shop-book. Bills of the same as vouchers were then made and sent to the pur-

---

taken from wells is not lost to the land-owner by a trespasser merely carrying it away in his own barrels (*Hail* v. *Reed*, 15 *B. Mon.* 479).

A trespasser, by building a house on lands of another, loses the house (*Ewell on Fixt.* 57, *et seq.*; *Waterm. on Tresp.* § 681 ; also, *Bonney* v. *Foss*, 62 *Me.* 248 ; *Mathes* v. *Dobschutz*, 72 *Ill.* 438 ; *Cannon* v. *Hare*, 1 *Tenn. Ch.* 22 ; *Poor* v. *Oakman*, 104 *Mass.* 309 ; *Beers* v. *St. John*, 16 *Conn.* 322 ; *Waterman* v. *Dutton*, 6 *Wis.* 265 ; *Rogers* v. *Woodbury*, 15 *Pick.* 156 ; *Holtzapple* v. *Phillebaum*, 4 *Wash. C. C.* 356; see *McKelway* v. *Armour*, 2 *Stock.* 115 ; *Wall* v. *Osborn*, 12 *Wend.* 39 ; *Leland* v. *Gassett*, 17 *Vt.* 403 ; *Taylor* v. *Townsend*, 8 *Mass.* 411 ; *Gray* v. *Oyler*, 2 *Bush* 256 ; *Smith* v. *Goodwin*, 2 *Me.* 173 ; *Fuller* v. *Tabor*, 39 *Me.* 519 ; *Russell* v. *Brown*, 63 *Me.* 203 ; *Humphries* v. *Newman*, 51 *Me.* 40 ; *Finch* v. *Alston*, 2 *Stew. & P.* 85 ; *Whitaker* v. *Cawthorne*, 3 *Dev.* 389 ; *Reese* v. *Jared*, 15 *Ind.* 142 ; *Crum* v. *Hill*, 40 *Iowa* 506 ; *Mills* v. *Redick*, 1 *Neb.* 437 ; *Emerson* v. *Western Union R. R. Co.*, 75 *Ill.* 175 ; *Carpentier* v. *Small*, 35 *Cal.* 346 ; *Ramsden* v. *Dyson*, 12 *Jur.* (*N. S.*) 506 ; *Jones* v. *Chappell*, *L. R.* (20 *Eq.*) 539 ; *Linahan* v. *Barr*, 41 *Conn.* 471 ; *Bennet* v. *Clemence*, 6 *Allen* 10 ; *Gibson* v. *Hutchins*, 12 *La. An.* 545 ; also, *Carson* v. *Clark* and other cases *infra*). The secretary of a corporation bought books with his own money, in which he entered subscriptions to the stock, &c.—*Held*, that the property of the books was in the corporation (*State*, *N. & N. Y. R. R.* v. *Goll*, 3 *Vr.* 285). Two broken chains belonging one to A. and one to B., were carried by B., without A.'s consent, to a blacksmith, who made them into two chains, thereby

chaser or consignee, stating each car by its number, the weight of its contents in pounds, the several kinds of material, the price of each and the aggregate amount.

The defendant Bowman, during his agency, had no supervision of the weighing or loading, his duty being that of bargaining with the purchaser, and afterwards giving directions for delivery at the shops from which the goods were to be shipped.

From April, 1873, to April, 1876, Dringer, as appears from his books of account, purchased and received from the company material weighing in all 18,810,953 pounds, or about 8,400 gross tons of 2,240 pounds each. The complainant asserts that, besides this amount shown by the defendant's books of account, he received over four millions of pounds, or about two thousand tons, of which no account was rendered, and for which nothing was paid. Before the filing of the bill he had paid the company more than $150,000. His answer admits an existing indebtedness of $35,646.97. The complainant asserts the true balance to be three times the admitted one.

adding two or three of A.'s links to B.'s chain.—*Held*, that the title did not thereby vest in A. (*Pulcifer* v. *Page*, 32 *Me.* 404).

Furs left in a debtor's hands after an insolvent assignment, and made up by him into hats, were held to have lost their identity, so that the title was vested in the debtor ( *Worth* v. *Northam*, 4 *Ired.* 102; see *Swift* v. *Barnum*, 23 *Conn.* 523; *Gregory* v. *Stryker*, 2 *Denio* 628; *Dresser Manf. Co.* v. *Waterston*, 3 *Metc.* (*Mass.*) 9); rails and posts put on lands, as a fence, by a trespasser, belong to the land-owner (*Ricketts* v. *Dorrel*, 55 *Ind.* 470; see *Hines* v. *Ament*, and other cases *infra*); and a railroad track ( *Van Keuren* v. *Central R. R.*, 9 *Vr.* 165; *Hunt* v. *Bay State Iron Co.*, 97 *Mass.* 279; *Shoemaker* v. *Simpson*, 16 *Kan.* 43, 3 *Cent. L. J.* 616, 693; see *Miss. & Tenn. R. R.* v. *Devaney*, 42 *Miss.* 555; *Ewell on Fixt.* 58, *note*).

As to vacant lands, the general rule is that the purchaser takes all improvements &c. previously put thereon by a trespasser; as trees felled and cut into cord wood (*Brock* v. *Smith*, 14 *Ark.* 431; *Turley* v. *Tucker*, 6 *Mo.* 583, overruling *James* v. *Snelson*, 3 *Mo.* 393. CONTRA, *Keeton* v. *Audsley*, 19 *Mo.* 362; *Carpenter* v. *Lewis*, 6 *Ala.* 682; *Pennybecker* v. *McDougall*, 48 *Cal.* 160; see, also, *Perkins* v. *Hackleman*, 26 *Miss.* 41; *Hungerford* v. *Redford*, 29 *Wis.* 345; *Dreyer* v. *Ming*, 23 *Mo.* 434; *Waterm. on Tresp.* § 819; *Winter* v. *Shrewsbury*, 2 *Scam.* 283; *Altemose* v. *Hufsmith*, 45 *Pa. St.* 121). So, where the injury was done between the time of purchase and the actual entering into possession (*Blevins* v. *Cole*, 1 *Ala.*

Jewett v. Dringer and Bowman.

The testimony and exhibits on both sides produced before the vice-chancellor are unusually voluminous, covering in all nearly two thousand two hundred printed pages. Ninety-eight witnesses were examined for the complainant and eighty-three witnesses for the defendants. The question of fact to be settled is the question of fraud. In disposing of it, it will not be necessary, if practicable, to do more than exhibit briefly the several classes of proofs relied upon to establish the fraud and their collective result.

Reference was made by counsel on both sides, in discussing Dringer's transactions and books of account, to his personal history and defective education. He was born in Austria, and is thirty-eight years of age. In 1868 he worked in a junk-shop in Newark for nine or ten dollars per week. Having earned about $500, he started business in Paterson, in 1869, with a partner who put in $250, and by whose death the business, from 1872, was carried on by himself alone. His books were kept, during this later period, by a book-keeper, who was examined as a witness in the cause.

---

210; *Gale* v. *Davis*, 7 *Mo.* 544). The rule extends to crops planted on vacant lands by a trespasser (*Boyer* v. *Williams*, 5 *Mo.* 335; *Floyd* v. *Ricks*, 14 *Ark.* 286; *Rasor* v. *Quails*, 4 *Blackf.* 286; see *Stockwell* v. *Phelps*, 34 *N. Y.* 363; *Reilly* v. *Ringland*, 39 *Iowa* 106; *Nudd* v. *Hobbs*, 17 *N. H.* 524); or any improvements, such as fences, fruit trees, buildings &c., made by a squatter (*Carson* v. *Clark*, 1 *Scam.* 115; *Mitchell* v. *Billingsley*, 17 *Ala.* 391; *Hatfield* v. *Wallace*, 7 *Mo.* 112; *Campbell* v. *Com.*, 2 *Rob.* (*Va.*) 791; *Cook* v. *Foster*, 7 *Ill.* 652; *Collins* v. *Bartlett*, 44 *Cal.* 371); but shingles made thereon were held to belong to the maker (*Reader* v. *Moody*, 3 *Jones* (*N. C.*) 372); hay cut by one in adverse possession of public lands, cannot be replevied by a prior possessor (*Page* v. *Fowler*, 28 *Cal.* 605, 37 *Cal.* 100; see *Johnson* v. *Barber*, 5 *Gilm.* 425; *Stockwell* v. *Phelps*, 34 *N. Y.* 363); turpentine collected from trees by the lessee of a stranger in possession without title, was held not to belong to a subsequent purchaser from the state (*Branch* v. *Morrison*, 6 *Jones* (*N. C.*) 16; *Branch* v. *Campbell*, 7 *Jones* (*N. C.*) 378; see, also, *Duncan* v. *Potts*, 5 *Stew. & Port.* 82).

Stone tortiously taken from a quarry, dressed, and laid as a pavement, belongs to the owner of the lot (*Jackson* v. *Walton*, 28 *Vt.* 43; see *Woodman* v. *Pease*, 17 *N. H.* 282); materials removed from a house by a mortgagor, and sold and used by his purchaser in building a house on other lands, cannot be followed by the mortgagee (*Peirce* v. *Goddard*, 22 *Pick.* 559; *Madigan* v. *McCarthy*, 108 *Mass.* 376; also,

Dringer testified to his own inability to read or write. His general native capacity is evinced by the extent of the business which he personally conducted. His acquaintance with writing was, to some extent, manifested on the witness stand, and argues, I think, less illiteracy than he attributes to himself; but, whether this be so or not, the competency of his book-keeper was not questioned, and the books themselves have been apparently kept with average carefulness and skill.

The first of the proofs, relied on to establish the fraud, is the result obtained from an examination of these books from May, 1872, to April 30th, 1876. The total amount of goods sold in this period, added to the amount of goods on hand in the inventory made by Mr. Miller, the receiver, is in excess of the total purchases, shown by the books, to the extent of 4,445,193 pounds, or about 2,000 tons.

Another kind of proofs is made up of the acts and declarations of Dringer, sworn to by witnesses, to the effect that he gave bribes to the company's employes, especially at Susquehanna; that he was habitually present at that shop when his

---

*Beers* v. *St. John*, 16 *Conn.* 322; *Salter* v. *Sample*, 71 *Ill.* 430; see, however, *Hamlin* v. *Parsons*, 12 *Minn.* 108; *Wilmarth* v. *Bancroft*, 10 *Allen* 348; *Dawson* v. *Powell*, 3 *Bush* 663; *Beard* v. *Duralde*, 23 *La. An.* 284; *Strickland* v. *Parker*, 54 *Me.* 263; *Buckout* v. *Swift*, 27 *Cal.* 433). A pole was taken by a trespasser, and used by him in erecting scaffolding; it was retaken by the owner, and in consequence of its removal, the scaffolding was weakened, fell and injured the trespasser when he went thereon.— *Held*, that the owner was not liable (*White* v. *Twichell*, 25 *Vt.* 620). Pine trees cut by a mortgagor become personalty by the severance, and the mortgagee has no claim to them after foreclosure and sale (*Berthold* v. *Holman*, 12 *Minn.* 335; *King* v. *Bangs*, 120 *Mass.* 514; *Gooding* v. *Shea*, 103 *Mass.* 360; *Peterson* v. *Clark*, 15 *Johns.* 205; but see *Gore* v. *Jenness*, 19 *Me.* 53; *Whidden* v. *Seelye*, 40 *Me.* 247); see, also, *Kircher* v. *Schalk*, 10 *Vr.* 335; *Rich* v. *Baker*, 3 *Denio* 79; *Crouch* v. *Smith*, 1 *Md. Ch.* 401; *Hutchins* v. *King*, 1 *Wall.* 53; *Hewes* v. *Bickford*, 49 *Me.* 71; *Loft'n* v. *Griffith*, 35 *Barb.* 58; *Bruce's Case*, 16 *Nat. B'k Reg.* 318; *Langdon* v. *Paul*, 22 *Vt.* 205; *Lackas* v. *Bahl*, 43 *Wis.* 53; *Curry* v. *Schmidt*, 54 *Mo.* 515; *O'Dougherty* v. *Felt*, 65 *Barb.* 220; *Moers* v. *Wait*, 3 *Wend.* 104; *Thomas* v. *Crofut*, 14 *N. Y.* 474; *Richardson* v. *York*, 14 *Me.* 216; *Waterm. on Tresp.* §§ 772, 777, 840); the husband of a *cestui que trust* of lands, entering and cutting trees, with the trustee's consent, acquires no interest therein which can be subjected to his debts (*Baldwin* v. *Porter*, 17 *Conn.* 473; see *Porch* v. *Fries*, 3 *C. E. Gr.* 204; *Mitchell* v. *Stetson*, 2

Jewett v. Dringer and Bowman.

car-loads were put on and weighed; that he took part in the loading and weighing; that cars were sometimes loaded at night, or out of business hours; that he stopped there in the house of the employe who had charge of the weighing, and sometimes in company with a woman who was known to be his mistress; that he gave presents to one or more of the weigh-master's family, with whom he was on intimate terms; that, in talking of his trade with the company, he boasted of being in with the right parties, who were his friends and would stand by him.

Another kind of proofs is the testimony of witnesses as to the size of the loads and the quality of the material, as they saw them put in the cars for Dringer.

Another is derived from a comparison of the weights of the loads sent to Dringer, from Susquehanna, with the weights of the same material sent in cars of the same capacity, to other parties at Paterson or Jersey City; and, also, from a comparison of loads sent to Dringer from Susquehanna, with loads sent to him from Jersey City, where he was not present at the loading, and where his influence with

---

Cush. 435; Glidden v. Taylor, 16 Ohio St. 509; Dickinson v. Codwise, 1 Sandf. Ch. 214).

A recovery in ejectment does not entitle the party to reclaim several millions of bricks made by the former occupant from the clay of the lands, under a supposed title (Lampton v. Preston, 1 J. J. Marsh. 454; see Harris v. Newman, 5 How. (Miss.) 654; Anderson v. Hapler, 34 Ill. 436; Moseley v. Miller, 13 Bush 408; O'Hagan v. Cline-smith, 24 Iowa 249; Key v. Woolfolk, 6 Rob. (La.) 424; Miller v. Phillips, 31 Pa. St. 456); the same rule was applied to crops gathered before a hab. fac. poss. executed, or right of entry established (Brothers v. Hurdle, 10 Ired. 490; Thomas v. Moody, 11 Me. 139; Codrington v. Johnstone, 1 Beav. 520; see Hooser v. Hays, 10 B. Mon. 72; Pennybecker v. McDougall, 46 Cal. 661; Doe v. Witherick, 3 Bing. 11; Hodgson v. Gascoigne, 5 B. & A. 88; Simpkins v. Rogers, 15 Ill. 397; Alies v. Hinckler, 36 Ill. 255; Nichols v. Dewey, 4 Allen 386); and to timber cut on lands of one not in possession (McClain v. Todd, 5 J. J. Marsh. 335; Cochran v. Whitesides, 34 Mo. 417; King v. Baker, 25 Pa. St. 186; see Rogers v. Potter, 3 Vr. 78; Yahoola Co. v. Irby, 40 Ga. 479; Shields v. Henderson, 1 Litt. 239; Ivey v. McQueen, 17 Ala. 408). An innocent purchaser from trespassers who cut trees and made them into railroad ties, is liable for their value as trees only, and not for their value, increased three-fold by the trespassers, as ties (Lake Shore R. R. v. Hutchins, Sup. Ct. Ohio, Dec. 1877, 6 Cent. L. J. 436; but see Nesbitt v. St. Paul Lumber Co., 21

the employes was not similarly felt.   The weights stated in the bills or vouchers from Susquehanna, to Dringer, are almost invariably less than the weights of loads sent to other parties, and less than those sent to himself from Jersey City.

Another and fifth class of proofs is made up of several specific instances wherein the weights of car-loads, as set down in the vouchers from Susquehanna, are shown to be less than the true weights, ascertained by Dringer by reweighing the loads for himself when received by him at Paterson.   These instances are found in a small weight-book, kept by the defendant, which, after being offered and marked as an exhibit before the vice-chancellor, appears to have been mislaid, so that the instances themselves were not brought to his notice in the argument before him.   They were insisted on in this court as plenary and demonstrative proofs.   They were not denied or explained by any suggestions on behalf of the defendants, nor can I see how any explanation avoiding their effect can be given.   This weight-book, marked exhibit 112 for complainant, is a small pass-

---

Minn. 491).   An innocent purchaser of a steam-engine hired and wrongfully annexed to the freehold by the bailee, may hold it against the owner (*Fryatt* v. *Sullivan Co.*, 5 *Hill* 116, 7 *Hill* 529 ; *Goddard* v. *Bolster*, 6 *Me.* 427 ; *Frankland* v. *Moulton*, 5 *Wis.* 1 ; *Woodruff Iron Works* v. *Adams*, 37 *Conn.* 233 ; see *Cope* v. *Romeyne*, 4 *McLean* 384).

II. *An intentional, but not fraudulent, mixture, it seems, works no forfeiture.*

(*Pratt* v. *Bryant*, 20 *Vt.* 333 ; *Ryder* v. *Hathaway*, 21 *Pick.* 298 ; *Att'y-Gen.* v. *Fullerton*, 2 *Ves. & B.* 263 ; *Clark* v. *Griffith*, 24 *N. Y.* 595 ; see, however, *Brakeley* v. *Tuttle*, 3 *W. Va.* 86 ; *Redington* v. *Chase*, 44 *N. H.* 36 ; *Goddard* v. *Bolster*, 6 *Me.* 427 ; *Clark* v. *Miller*, 4 *Wend.* 628 ; *Colburn* v. *Simms*, 2 *Hare* 543, 554).

In *The Distilled Spirits*, 11 *Wall.* 356, the government, after forfeiture of certain spirits, ran them through leaches mingled with other spirits belonging to the same party.—*Held*, that the identity of the liquor was not destroyed by the rectifying process, nor thereby forfeited by the government, and that each was entitled to his portion.

In *Gordon* v. *Jenney*, 6 *Mass.* 465, after a deputy-sheriff levied on certain goods in a store, another deputy levied on other similar goods, standing in front of the store, and carried them into the building where they were intermixed with the rest.—*Held*, that the second deputy thereby lost his levy.   Also, *Sawyer* v. *Merrill*, 6 *Pick.* 477 ; *James* v. *Burnet*, *Spen.* 635.

book whose entries, with the few exceptions now referred to, are the weights of the loads as shown by the company's vouchers. The excepted instances or entries are those of the weights ascertained on their arrival in Paterson. For example: Three car-loads of scrap sent from Susquehanna, June 7th, 1873, were weighed at Paterson in the wagons; the weights of the wagons, loaded and empty, are set down in two columns, and the difference between the two, being the weights of the loads, in a third. An entry between the columns identifies these wagon-loads as taken from the three car-loads whose weights are put down in the voucher of the company. The difference between the wrong weight at Susquehanna and the right weight at Paterson, is 8,925 pounds, a difference in favor of Dringer, on each car-load, of 2,975 pounds, and a difference on the whole shipment, of a trifle less than four tons. In his journal, the company is credited with the smaller weight stated in the voucher.

Several other instances of similar conclusiveness are furnished by this exhibit. Entries of this kind were soon dis-

---

Bank-bills, securities &c. not capable of identification, are forfeited by confusion with similar chattels (*Panton* v. *Panton*, 15 *Ves.* 440; *Taylor* v. *Plumer*, 3 *M. & S.* 562; *Drake* v. *Taylor*, 6 *Blatch.* 14; *Ward* v. *Eyre*, 2 *Bulst.* 323; *Fellows* v. *Mitchell*, 1 *P. Wms.* 81, 83; *Levy* v. *Cavanagh*, 2 *Bosw.* 100. See *Tower* v. *Appleton Bank*, 3 *Allen* 387; *Skidmore* v. *Taylor*, 29 *Cal.* 619; *Coffin* v. *Anderson*, 4 *Blackf.* 395; *Moody* v. *Keener*, 7 *Port.* (*Ala.*) 218; *Pettit* v. *Boujon*, 1 *Mo.* 64; *Sager* v. *Blain*, 44 *N. Y.* 445).

Bricks laid in a wall, under a contract which was afterwards forfeited, the contract relet and the same bricks removed and piled up to be again used, became realty by their first use, and are not subject to levy, as personalty, by the creditors of the first contractor (*Moore* v. *Cunningham*, 23 *Ill.* 328; *Beard* v. *Duralde*, 23 *La. An.* 284; *Wadleigh* v. *Janvier*, 41 *N. H.* 505).

Where milk was contributed by several farmers and worked into cheese by a company which sold it, each farmer sharing the expense and profit proportionately, the cheese was held not to be subject to levy by the creditors of one of the farmers (*Butterfield* v. *Lathrop*, 71 *Pa. St.* 225).

In *Wetherbee* v. *Green*, 22 *Mich.* 311, G., a tenant in common, authorized his co-tenant S., by parol, to sell timber from the lands. S. being indebted to C. and B., conveyed to them by warranty-deed, the undivided half of the land, on a parol condition to reconvey on payment of their debts. S., after such conveyance, sold a quantity of the timber

continued, and in a partial copy of the book, made in a larger form, the entries themselves are omitted.

It appears, from the evidence, that the loads from Jersey City were reweighed, at Dringer's request, by the company's agent, at Paterson. The loads from Susquehanna were never so weighed. Why not, sufficiently appears from the results of his own reweighing in the experimental instances mentioned.

In the presence of these facts, and of the oath of Dringer that he never received from the company any material, to his knowledge, beyond what was reported to the company, it is needless to inquire what reliance can be put upon his testimony, or of what avail is the testimony of witnesses to his good character and credit.

As to the other classes of proofs, a few observations will suffice. In their combination they establish, in my judgment, beyond a reasonable doubt, the fact of fraud, both in the weights and in the quality of the goods.

The testimony of the witnesses who have sworn to his declarations and acts, though the testimony of some of them

---

to the plaintiff, who cut the same into hoops. On replevin brought by G., C. and B. for the hoops,—*Held*, that the timber cut under a supposed proper authority being worth $25 and the hoops made therefrom worth $700, the title passed to the plaintiff. Also, *Baker* v. *Wheeler, Lock. Rev. Cas.* 470; *Alford* v. *Bradeen*, 1 *Nev.* 228; *Elwell* v. *Burnside*, 44 *Barb.* 447; *Brown* v. *Sax*, 7 *Cow.* 95; *Haskins* v. *Record*, 32 *Vt.* 575; *Harmon* v. *Gartman*, *Harp.* 430.

In *Gray* v. *Parker*, 38 *Mo.* 160, certain trunks belonging to the plaintiff disappeared and were found, as claimed, among other trunks, at defendant's trunk-store.—*Held*, that no tortious taking being proved, it was error to instruct the jury that if the defendant willfully took and carried away the trunks, and afterwards mixed them with his own so that it was impossible to identify them, then the plaintiff was entitled to recover any of defendant's goods to the amount taken, although such instruction would have been correct, if the defendant had been shown to be a willful trespasser.

In *Alley* v. *Adams*, 44 *Ala.* 609, after the execution of a chattel mortgage on a steam-engine &c., the mortgagor attached several other machines thereto.—*Held*, that since they were capable of identification and detachment, the mortgagee could not claim them; see *Randolph* v. *Gwynne*, 3 *Hal. Ch.* 88; *Perry* v. *Pettingill*, 33 *N. H.* 433; *Fowler* v. *Hoffman*, 31 *Mich.* 215; *Jewett* v. *Patridge*, 12 *Me.* 243; *Robinson* v. *Holt*, 39 *N. H.* 557; *Cochran* v. *Flint*, 57 *N. H.* 514; *Dunning* v. *Stearns*,

Jewett *v.* Dringer and Bowman.

was sought to be broken by impeaching their reputation for veracity, is corroborated by circumstances incapable of dispute, and must be accepted as substantially true.

The corroborative proof, from a comparison of the loads to Dringer from Susquehanna with the loads to other parties, of the some material, from the same shop, may be seen by an example, taken at random, from the account shown by the exhibits. Thus, in August, 1875, twenty car-loads were sent to him at Paterson, and three car-loads to a party at Jersey City. The average weight of Dringer's loads, as put down in the vouchers, is 19,210 pounds. The average weight of the others is 24,675 pounds—a difference, in his favor, on each load, of about two and a half tons. Taking, for another example, the longer period from March 5th, 1875, to February 24th, 1876, there were sent to him, from the same shop, one hundred and ninety-two loads, of which the average weight of each load, as set down in the vouchers, is 19,301 pounds. During the same period there were sent, from the same shop, to other parties in Jersey City and Paterson, thirty-nine loads, of an average weight

9 *Barb.* 630; *Adams* v. *Wildes*, 107 *Mass.* 123; *Hamilton* v. *Rogers*, 8 *Md.* 301.

In *Stuart* v. *Phelps*, 39 *Iowa* 14, the holder of a chattel-mortgage on a crop of growing corn, brought trover against the defendant for its conversion. The latter claimed by virtue of a judgment and execution against the mortgagor.—*Held*, that the plaintiff was entitled to recover the value of the corn in the crib in which it had been put by the defendant, after husking, and that if the defendant had confused it with his own corn in the crib, the duty of separating his own lay on him; also, that the cost of husking and gathering could not be deducted. See, also, *Benjamin* v. *Benjamin*, 15 *Conn.* 347; *Ellis* v. *Wire*, 33 *Ind.* 127; *Backenstoss* v. *Stahler*, 33 *Pa. St.* 251; *Johnson* v. *Tantlinger*, 31 *Iowa* 500; *Cook* v. *Steel*, 42 *Tex.* 57; *Lewis* v. *Whittemore*, 5 *N. H.* 364; *Herman on Chat. Mort.* § 45.

The rule is the same, if a purchaser from the mortgagor with notice confound his own goods with those covered by the mortgage (*Fuller* v. *Paige*, 26 *Ill.* 358; *Preston* v. *Leighton*, 6 *Md.* 88; *Willard* v. *Rice*, 11 *Metc.* (*Mass.*) 493; see *Southworth* v. *Isham*, 3 *Sandf.* 448).

If a mortgagee in possession mixes his own goods with those mortgaged, a failure to select his own, at the mortgagor's request, is evidence of a conversion (*Simpson* v. *Carleton*, 1 *Allen* 109; see *Armstrong* v. *McAlpin*, 18 *Ohio St.* 184).

Jewett *v.* Dringer and Bowman.

to each load of 24,916 pounds—a difference in Dringer's favor, on each of the one hundred and ninety-two loads, of 5,615 pounds, or something over two and a half tons per load.

These figures give the direct testimony respecting deception in weights a probability too strong to be resisted. Comparing the loads sent him from Jersey City with those sent him from Susquehanna, the same result appears, the same loss to the company.

Much of the argument was in regard to the tabulated statement, marked exhibit 118, made up from Dringer's books, showing his total purchases on one side and his total sales on the other, from May, 1872, to the beginning of this suit. By adding to his total sales the material in his yard in the possession of his receiver, and deducting from their amount the total purchase of material, a surplus is found of about 2,000 tons; that is to say, he appears to have on hand 2,000 tons never purchased. The inference of fraud from

In *Ryder* v. *Hathaway*, 21 *Pick.* 298, it was held, that if a plaintiff mingled wood cut from different lots, supposing it all to be his own, and afterwards the defendant, knowing that a part of it came from the plaintiff's land, took the whole, he would be held liable as a trespasser.

In *Panton* v. *Panton*, 15 *Ves.* 440, a clerk remitted his own money, together with that of his employer, to a broker, to be invested in securities which became so confused that the property could not be distinguished.—*Held*, that he must lose the whole. See *Wharton on Agency*, §§ 243, 279; *Hall* v. *Page*, 4 *Ga.* 428; *Wiley* v. *Rixy*, 43 *Ga.* 438; *Beach* v. *Forsyth*, 14 *Barb.* 499; *Lord Chedworth* v. *Edwards*, 8 *Ves.* 46, 50; *Griffith* v. *Bogardus*, 14 *Cal.* 410; *Goddard* v. *Bolster*, 6 *Me.* 427. So, if, after such confusion, the money be stolen, the burden of proof is on the agent to prove that the part stolen was his principal's. *Bartlett* v. *Hamilton*, 46 *Me.* 435.

The rule is the same as to confusion by an administrator or trustee (*Perry on Trusts*, §§ 128, 447, 463, 837; *Lake* v. *Park*, 4 *Harr.* 108; *Frey* v. *Demarest*, 1 *C. E. Gr.* 236; *Elmer* v. *Loper*, 10 *C. E. Gr.* 475; *Brackenridge* v. *Holland*, 2 *Blackf.* 377; *Ringgold* v. *Ringgold*, 1 *Har. & Gill* 11; *Crane* v. *DeCamp*, 7 *C. E. Gr.* 614); and as to creditors the *cestui que trust* thereafter stands the same as any other creditor. (*Nevins* v. *Disborough*, 1 *Gr.* 343; *Janeway's Case*, 4 *Nat. Bank. Reg.* 100; *Thompson's Appeal*, 22 *Pa. St.* 16.)

III. *A confusion of goods by mistake creates no forfeiture.*

In *Weymouth* v. *C. & N. R. R. Co.*, 17 *Wis.* 556, wood was cut by the plaintiff and piled near the track of the defendants, for sale. By

Jewett *v.* Dringer and Bowman.

this surplus was strenuously combated by denying, first, the correctness, or rather the completeness, of his books; secondly, the correctness of the receiver's inventory of goods on hand; and, thirdly, by asserting the existence of a large quantity of goods on hand at the opening of the books in May, 1872.

It cannot be doubted, I think, after carefully studying the evidence, that each of the three points thus taken for the defendant is, to some extent, good.

Sales and purchases were made by Dringer of which no entries were made in his books, but the difference between the two—and it is by this difference only that the effect of the tabulated statement relied on would be changed—is relatively small. The inventory, also, is open to question, having been made approximately, and not by full and exact measurements or weights.

But the most ample allowances under these two heads would not dispose of one-fifth of the surplus, and, assuming

mistake, they took the wood away, and piled it, indiscriminately, with other wood of their own.—*Held*, that the proper measure of damages was its value at the time of the conversion, with such increase as it may have received from any cause independent of the defendants' acts. Also, *Moody* v. *Whitney*, 38 *Me.* 174; *Forsyth* v. *Wells*, 41 *Pa. St.* 291; *Grant* v. *Smith*, 26 *Mich.* 201; *Farwell* v. *Price*, 30 *Mo.* 587; but see *Bennet* v. *Thompson*, 13 *Ired.* 146; *Smith* v. *Gouder*, 22 *Ga.* 353; *Benjamin* v. *Benjamin*, 15 *Conn.* 347; *Hill* v. *Canfield*, 56 *Pa. St.* 454; *Coxe* v. *England*, 65 *Pa. St.* 212; *Bailey* v. *Shaw*, 24 *N. H.* 297; *Hungerford* v. *Redford*, 29 *Wis.* 345; *Pearson* v. *Inlow*, 20 *Mo.* 322.

In *Winchester* v. *Craig*, 33 *Mich.* 205, defendants, who by mistake trespassed and cut logs on lands of the plaintiff and transported them with their own to market, were allowed the expense incurred by them in getting the logs from the land to the market. Also, *Foote* v. *Merrill*, 54 *N. H.* 490; *Final* v. *Backus*, 18 *Mich.* 218; see *Chipman* v. *Hibbard*, 6 *Cal.* 162; *Whitbeck* v. *N. Y. Cent. R. R.*, 36 *Barb.* 644; *Kier* v. *Peterson*, 46 *Pa. St.* 357; *Young* v. *Lloyd*, 65 *Pa. St.* 197; *Webster* v. *Moe*, 35 *Wis.* 75; *Isle Royal Mining Co.* v. *Hertin*, *Sup. Ct. Mich.*, Oct. 1877, 17 *Alb. L. J.* 114; *Nesbitt* v. *St. Paul Lumber Co.*, 21 *Minn.* 491.

In *Newson* v. *Anderson*, 2 *Ired.* 42, A. cut a tree on his own land, which accidentally fell on B.'s land.—*Held*, that A. was liable therefor in trespass. See, also, *Lambert* v. *Bessy*, *Ray. T.* 421; *Wilson* v. *Newbury*, *L. R.* (7 *Q. B.*) 31; *Scullin* v. *Dolan*, 4 *Daly* 163; *Wright* v. *Compton*, 53 *Ind.* 337.

In *Leonard* v. *Belknap*, 47 *Vt.* 602, ten turkeys belonging to the plaintiff wandered on defendant's land, and there mingled with and

20

that the amount of goods on hand, at the opening of the books, was as large even as that stated by Dringer himself, a surplus of eight or ten hundred tons would still be left, suggesting, if not attesting, the false under-weights by which it was produced.

The inexact and debatable factors involved in this statement or table marked exhibit 118, can be corrected in a future accounting, when the material on hand has been more carefully weighed or computed.    The table, as it stands, evinces more certainly the *fact* than the *extent* of the fraud.

While thus differing with the vice-chancellor as to the fullness and cogency of the proofs against Dringer, I agree with him in thinking that, as against the defendant Bowman, the allegations of the complainant inculpating him with his co-defendant, have not been maintained, and that, as to him, the bill should be dismissed.    A sale to Dringer of 1,700 tons, the transaction specially set out and charged

were shut up with his turkeys.  In trover, after a demand,—*Held*, that since plaintiff, as shown by the evidence, was entitled to ten of them, although he could not identify all of his own, that defendant's offer to allow him to take all that he could identify and any others that he might select up to  a certain number—which, however, was less than ten—constituted a conversion.

In *Smith* v. *Morrill*, 56 *Me.* 566, the plaintiff trespassed on defendants' lands, cut their logs, put his own mark on them, and rafted them all together.  The defendants, thereupon, with an intention of only reclaiming their own, actually took more.  In trover, for the value of the excess,—*Held*, that they were not liable, as wrong-doers, until the plaintiff had pointed out his property and demanded it. Also, *Bryant* v. *Ware*, 30 *Me.* 295; *Barron* v. *Cobleigh*, 11 *N. H.* 559; *May* v. *Bliss*, 22 *Vt.* 477 ; *Root* v. *Bonnema*, 22 *Wis.* 539.

In *Parker* v. *Walrod*, 13 *Wend.* 296, 16 *Wend.* 514, a plaintiff, while a wagon of the defendant was in his possession, attached his own whiffle-trees &c. thereto, and they were retaken by the defendant, without knowledge of the change.—*Held*, that trespass would not lie to recover the appendages.    *Query*, whether there was any remedy.   See *Clark* v. *Wells*, 45 *Vt.* 4.

In *Hines* v. *Ament*, 43 *Mo.* 298, a fence placed on another's lands, by reason of mistake of boundaries, was held not to lose its character as personalty.    Also, *Matson* v. *Calhoun*, 44 *Mo.* 368; *Whitfield* v. *Bodenhamer, Phillips* (*N. C.*) 362; *Stuyvesant* v. *Tompkins*, 9 *Johns.* 61, 11 *Johns.* 569; *Weniz* v. *Fincher*, 12 *Ired.* 297; *Doherty* v. *Thayer*, 31 *Cal.* 140; *Waterm. on Tresp.* §715; *Ogden* v. *Lucas*, 48 *Ill.* 492; *Robertson* v. *Phillips*,

Jewett v. Dringer and Bowman.

to be fraudulent in the original bill, is not proved to be so by the evidence, which, in its bearing upon him, does not call for review. Whatever criticisms it may suggest, it does not warrant the adjudication of intentional wrong.

As to Dringer, the case is one of fraudulent procuring and intermixture of the company's goods with his own. The goods thus procured and intermingled were of different kinds and values, and cannot be so distinguished as to enable those of one owner to be separated from those of the other. The rule applicable to the case is well settled by authority and in accordance with natural justice.

In *Lupton* v. *White*, 15 *Ves.* 432, Lord Eldon states the old law to be, that if one man mixes his corn or flour with that of another, and they were of equal value, the latter must have the given quantity; but if articles of different value are mixed, producing a third value, the aggregate of both, and, through the fault of the person mixing them, the other party cannot tell what was the original value of his prop-

3 *Iowa* 220; compare *Burleson* v. *Teeple*, 2 *Greene* (*Ia.*) 542; *Pfeiffer* v. *Grossman*, 15 *Ill.* 53; *Howard* v. *Black*, 42 *Vt.* 258; *Brown* v. *Bridges*, 31 *Iowa* 138; *Gidden* v. *Bennett*, 43 *N. H.* 306; *State* v. *Graves*, 74 *N. C.* 396; *McLaughlin* v. *Johnson*, 46 *Ill.* 163; *Huntington* v. *Whaley*, 29 *Conn.* 391; *Millar* v. *Humphries*, 2 *A. K. Marsh.* 446.

In *Treat* v. *Barber*, 7 *Conn.* 274, the plaintiff had in her possession, in a trunk, certain articles of clothing &c. of her own, which trunk also contained other similar articles claimed by her and also claimed as her father's. On the service of an attachment by his creditors, she refused to select from the trunk her own property, or to point out which belonged to her father.—*Held*, that there was no confusion of goods, since no actual fraud was shown, that the placing of the goods in the same trunk might have been accidental, and that the defendants were liable in trespass.

IV. *As to a fraudulent mixture, the intent is always a question for the jury.*

*Taylor* v. *Jones*, 42 *N. H.* 25; *Wood* v. *Hewett*, 10 *Jur.* 390. See *Watkins* v. *Gale*, 13 *Ill.* 152.

In *Wingate* v. *Smith*, 20 *Me.* 287, mill logs were fraudulently taken by another, converted into boards and so intermixed with his own as not to be distinguished.—*Held*, that replevin would lie for the whole pile of boards.

In *Ames* v. *Mississippi Boom Co.*, 8 *Minn.* 467, it was held that a plaintiff in replevin must identify logs claimed by him, notwithstanding the

erty, he must have the whole. The observations of Sir William Blackstone are cited in the note pointing out the distinction between the civil law and our own law upon this point; the civil law, though giving the aggregate to the party who did not interfere in the mixture, allowed the other a satisfaction for his loss. "But our law," says Blackstone, "to guard against fraud, gives the entire property, without any account, to him whose original dominion is invaded and endeavored to be rendered uncertain without his consent." In *Hart* v. *Ten Eyck*, 5 *Johns. Ch.* 108, it is ruled that, if a party having charge of the property of others so confounds it with his own that the line of distinction cannot be traced, all the inconvenience of the confusion is thrown upon the party who produced it, and it is for him to distinguish his own property or lose it. If it be a case of damages, damages are given to the utmost value that the

fact that defendant may have driven them with his own, so as to render them indistinguishable. Also, *Wood* v. *Fales*, 24 *Pa. St.* 246.

In *Loomis* v. *Green*, 7 *Greenl.* 386, it was held that if one willfully turns his own logs adrift in a stream, and they, in floating down, become confounded with others, the burden of proof is on him to identify his own. See, also, *Hesseltine* v. *Stockwell*, 30 *Me.* 237.

In *Heard* v. *James*, 49 *Miss.* 236, the defendants willfully cut trees on the plaintiff's lands, and converted them into staves.—*Held*, in replevin, that they were not entitled to deduct the value of their labor from the value of the staves. See, also, *Smith* v. *Gouder*, 22 *Ga.* 353; *Buckmaster* v. *Mower*, 21 *Vt.* 204; *Single* v. *Schneider*, 30 *Wis.* 570; *Herdic* v. *Young*, 55 *Pa. St.* 176; *Firmin* v. *Firmin*, 9 *Hun* 571; *Nesbit* v. *St. Paul Lumber Co.*, 21 *Minn.* 491.

As to a fraudulent mixture of literary matter, see *Mawman* v. *Tegg*, 2 *Russ.* 385, 391; *Lewis* v. *Fullarton*, 2 *Beav.* 11; 2 *Morgan's Law of Lit.* 616.

In *McDowell* v. *Rissell*, 37 *Pa. St.* 164, a brother-in-law of a judgment debtor fraudulently mingled his own goods, old iron, scrap &c., with that upon which creditors of the other owner were entitled to levy, and manufactured the whole.—*Held*, that he must lose the whole. See *Redington* v. *Chase*, 44 *N. H.* 36.

In *Beach* v. *Schmultz*, 20 *Ill.* 185, a cargo of different kinds of lumber was shipped to M.; there, without the knowledge of the plaintiff, a quantity of the same kind of lumber was put on board by G., and the whole reshipped to C.—*Held*, that the creditors of G. could not attach his interest in the cargo, because it could not be identified, and that G. forfeited the quantity he had added. Also, *Jenkins* v. *Steanka*, 19 *Wis.* 139.

Jewett v. Dringer and Bowman.

article will bear.  The same doctrine is expressed and applied in *Providence Rubber Co.* v. *Goodyear's Ex'r,* 9 *Wall.* 988; *The Idaho,* 3 *Otto* 586; *Wooley* v. *Campbell,* 8 *Vr.* 169. In the last-cited case, the language of Justice Depue is, that the doctrine that one mixing his goods with those of another, so that a separation is impossible, loses his property, is a doctrine that is adopted to prevent fraud. It is never resorted to except in favor of an innocent party as against a wrong-doer.

In the present case, it is claimed, and may prove to be true, that the whole indebtedness from Dringer to the company, including the $35,646.97 admitted to exist, is greater than the value of the goods in the receiver's possession. Whether this be so or not, the complainant is entitled to have the whole indebtedness ascertained as nearly as practicable, and a decree taken for the amount. For this purpose there

---

In *Seavy* v. *Dearborn,* 19 *N. H.* 351, a plaintiff was held to have lost all right to reclaim goods which he had willfully intermixed with those of a third person in a store.  Also, *Smith* v. *Welch,* 10 *Wis.* 91; *Willard* v. *Rice,* 11 *Metc.* 493.

V. *In the following cases the rule has been adopted, that even where the confusion has been fraudulent, the goods, if still capable of identification or apportionment, may be reclaimed.*

In *Hesseltine* v. *Stockwell,* 30 *Me.* 237, a trespasser cut the plaintiff's logs, marked them with his own mark, and drove them with his own logs.—*Held,* that even if such acts were fraudulent, there could be no forfeiture, because the logs being of equal value, each owner was entitled to his proportion of the whole.  Also, *Stearns* v. *Raymond,* 26 *Wis.* 74.

In *Goodenow* v. *Snyder,* 3 *Greene* (*Ia.*) 599, the same rule was applied in case of a forcible taking of gold dust by the defendant, and mixing it with his own.

In *Schulenberg* v. *Harriman,* 2 *Dill.* 398, 21 *Wall.* 44, logs were cut without license from lands belonging to the state of Minnesota, and intermingled with logs cut from other lands, so as not to be distinguishable.—*Held,* under the Minnesota statute, that the state could replevy her proportion from the whole mass.  In *Stephenson* v. *Little,* 10 *Mich.* 433, the court were divided as to this point. See, also, *Ballou* y. *O'Brien,* 20 *Mich.* 304.

In *Wood* v. *Fales,* 24 *Pa. St.* 246, after the plaintiffs sent a large number of cloths to be printed, the sheriff seized all of the goods in the factory, and the plaintiffs then claimed two hundred and fifty-two pieces, and, not being able to identify their own, they claimed that number of similar goods.—*Held,* that if the printers had actually confused them, the plaintiffs' claim must be allowed; *aliter,* if they had

Jewett *v.* Dringer and Bowman.

should be a reference to a master. The receiver should be empowered to make sale of the goods and apply the proceeds to the debt admitted to be due, and the balance, if any, to the additional indebtedness that may, upon the accounting, be found to exist. The difficulties in the way of arriving at satisfactorily definite, or at any other than proximate and probable, results, as to the extent of the fraudulent weights, and still more as to the values of the material fraudulently procured, are indeed great, and cannot, perhaps, be overcome; but they present no bar to the accounting and decree. " When," said Lord Brougham, in *Docker* v. *Somes,* 2 *Myl. & K.* 674, "did a court of justice, whether administered according to the rules of equity or law, ever listen to a wrong-doer's argument, to stay the arm of justice, grounded on the steps he himself had successfully taken to prevent his iniquity from being traced? · Rather

sold the goods and had on hand similar goods which they intended to put in their place.

In *Wooley* v. *Campbell,* 8 *Vr.* 163, a trespasser planted oysters in plaintiff's bed.—*Held,* that he could not set up that the oysters taken by the plaintiffs were not natural ones or those planted by them.

In *Powers* v. *Kindt,* 13 *Kan.* 74, cattle belonging to two owners trespassed on lands, and it was impossible to determine the exact damage done by the cattle of each owner.—*Held,* that a verdict apportioning the damage according to the number of cattle belonging to each owner, was good.  See *Durham* v. *Goodwin,* 54 *Ill.* 469.

An officer is not justified in levying on several articles where only some of them belong to the defendant, if those not belonging to him are capable of identification, as furniture in a house (*Bond* v. *Ward,* 7 *Mass.* 123 ; *Smith* v. *Sanborn,* 6 *Gray* 134; *Colwill* v. *Reeves,* 2 *Camp.* 575 ; but see *Taylor* v. *Jones,* 42 *N. H.* 25 ; *Armstrong* v. *McAlpine,* 18 *Ohio St.* 184); or, cattle (*Holbrook* v. *Hyde,* 1 *Vt.* 236) ; or, boots and shoes in boxes marked (*Tufts* v. *McClintock,* 28 *Me.* 424); or, crockery standing on a shelf (*Treat* v. *Barber,* 7 *Conn.* 274); or, horses in separate stalls (*Moore* v. *Bowman,* 47 *N. H.* 494).

In *Albee* v. *Webster,* 16 *N. H.* 362, a sheriff finding goods of A., the execution debtor, mingled with those of B., called upon B. to separate his therefrom, and, on refusal, levied on the whole.—*Held,* that he was not a trespasser.  Also, *Sawyer* v. *Merrill,* 6 *Pick.* 477 ; *Shumway* v. *Rutter,* 8 *Pick,* 443; *Weil* v. *Silverstone,* 6 *Bush* 698 ; *Wellington* v. *Sedgwick,* 12 *Cal.* 469 ; *Smith* v. *Sanborn,* 6 *Gray* 134; *Robinson* v. *Holt,* 39 *N. H.* 557 ; *Roth* v. *Wells,* 41 *Barb.* 194, 29 *N. Y.* 471 ; but see *Kingsbury* v. *Pond,* 3 *N. H.* 511, where the confusion was without the fault of the plaintiff, and the sheriff was held liable as a trespasser ; and also, *Wilson* v. *Lane,* 33 *N. H.* 466; *Treat* v. *Barber,* 7 *Conn.* 274.—REP.

let me ask, When did any wrong-doer ever yet possess the hardihood to plead, in aid of his escape from justice, the extreme difficulties he had contrived to throw in the way of pursuit and detection, saying, you had better not make the attempt, for you will find I have made the search very troublesome? The answer is, the court will try."

In the light of the facts in this case, and of the legal and equitable principles expressed by the authorities cited, the injunction and receivership, directed by the chancellor in the early stages of this suit, are seen to have been the appropriate and efficient methods of relief. The consequences to the defendant of the abrupt breaking up of his business and the taking possession of his goods by the court, destructive as they may have been of his seemingly great and rapid prosperity, are consequences of which he cannot be heard to complain. They were the legitimate end of his own dishonest practices, long-continued and system_atic, by which the company and its receiver were defrauded of their property, their employes corrupted, involved in criminal guilt and made liable to criminal prosecution.

The decree below, dismissing the bill as to Dringer, should be reversed, with costs, and a decree made in accordance with the foregoing views.

Decree unanimously reversed.